**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-3515

FREDERICK KIRKPATRICK,

Petitioner-Appellant,

versus

JOHN P. WHITLEY, Warden, Louisiana
State Penitentiary, ET AL.,

Respondents.

ST. TAMMANY PARISH DISTRICT
ATTORNEY'S OFFICE,

Movant-Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

(     May 20, 1993     )

Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.

POLITZ, Chief Judge:

Convicted of capital murder by a Louisiana jury and sentenced to death Frederick Kirkpatrick seeks federal habeas relief for the second time. The district court denied relief. We now vacate and remand for an evidentiary hearing to determine whether Kirkpatrick's claims relating to prosecutorial misconduct are supported in fact and to reconsider the abuse of the writ issue in

light of the intervening decision by the Supreme Court in **Sawyer v. Whitley**.[1]

## Background

In our prior panel opinion we summarized the facts:

> On the night of January 27, 1982, Frederick Kirkpatrick and Charles Faulkner were in the home of Steven Radoste, who lived alone in the Pearl River area of St. Tammany Parish. During the night, Radoste was murdered: he was struck in the head with a heavy glass object, stabbed with a butcher knife in the abdomen and chest, and shot in the head. Radoste's house was robbed, and his pickup truck was stolen. . . . Kirkpatrick confessed that he and Faulkner had driven the truck to a remote area and that he had watched Faulkner burn it. He also stated that Faulkner possessed a .22 caliber Derringer firearm[2] . . . . Police seized several of Radoste's belongings from Kirkpatrick's apartment, as well as a pair of Kirkpatrick's sneakers, the sole pattern of which was matched to a bloody footprint at Radoste's home.[3]

Kirkpatrick, on the advice of counsel, turned down a plea offer which would have resulted in a life sentence. Faulkner was tried separately and sentenced to life in prison. Kirkpatrick claimed that he stabbed Radoste in self defense. Although his version of the events has been inconsistent, Kirkpatrick testified that he stabbed Radoste after Radoste made, at gunpoint, unwelcome homosexual advances.

Kirkpatrick explained his presence in Radoste's home by

---

[1] \_\_\_\_\_ U.S. \_\_\_\_\_, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

[2] The Meridian Police seized the gun from Faulkner upon his arrest. The gun belonged to the victim.

[3] **Kirkpatrick v. Butler**, 870 F.2d 276, 277-78 (1989).

claiming that Radoste gave him and Faulkner a ride when they were hitchhiking in Mississippi, and invited them to his home in Louisiana. According to Kirkpatrick, Radoste suggested that Kirkpatrick take a shower and then, after he finished showering, demanded sexual favors. When Kirkpatrick refused, Radoste pulled a gun. Kirkpatrick claims that he then grabbed a knife, while Radoste was distracted, and stabbed him. He offered no explanation for the two pillows found on Radoste's head nor for the bullethole through one and the bullet in the victim's head.[4]

It is clear that the decedent's sexual preference was a significant issue at trial because it bore upon the factual basis for Kirkpatrick's claim of self defense. To rebut Kirkpatrick's theory the prosecution called Officer McKormick, one of the investigating officers, who testified that the only evidence found of Radoste's sexual preference was a Playboy magazine, suggestive of heterosexual interest. The prosecution also offered a

---

[4] During opening statements the prosecution mused that Faulkner shot Radoste. Only Julie Yarbrough, Faulkner's girlfriend and the mother of his child, testified -- inconsistently with her prior statement contained in the police reports -- that Kirkpatrick told her that he, and not Faulkner, shot Radoste.

Kirkpatrick complains of the prosecution approaching witness Julie Yarbrough on the day of the trial to take a hair sample and fingerprints. Found at the murder scene was a bloody fingerprint on a glass and a mass of hair firmly clasped in the victim's hand. The defense was not informed that the prints and hair did not come from Radoste, Faulkner, or Kirkpatrick. The results of the test remain a mystery. We focus on the affidavits of the first two officers to arrive at the scene which precipitate our direction of an evidentiary hearing. The district court may wish to reconsider Kirkpatrick's other complaints to the extent that the evidentiary hearings may bring new light on those issues.

photograph depicting a crutch near the victim.  Beyond the obvious potential of generating sympathy for the victim, the crutch pointedly tended to discount the victim's ability to present the sort of threat that would justify the use of deadly force in self defense.  The prosecution also presented testimony of Radoste's neighbor, David Garrett, who claimed to have seen Radoste walking on crutches when Garrett delivered a spaghetti dinner to Radoste, at the same time Kirkpatrick claimed to have been riding in Radoste's car.

Kirkpatrick filed his first state court application for habeas relief on October 17, 1984.  After a limited evidentiary hearing relief was denied.  On September 19, 1984, the Louisiana Supreme Court denied remedial writs.  Kirkpatrick promptly filed his first federal application complaining of numerous deficiencies in his trial as well as the method of electrocution.  All relief was denied.[5]  We affirmed in part and vacated in part instructing the district court to make factual findings regarding the sufficiency of trial counsel's efforts to suppress physical evidence.[6]  On remand the district court again found no basis for relief.  We affirmed.[7]  A second state habeas application, raising all of the

_____

[5]     **Kirkpatrick v. Blackburn**, 597 F.Supp. 1562 (E.D.La. 1984).

[6]     **Kirkpatrick v. Blackburn**, 777 F.2d 272 (5th Cir. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

[7]     **Kirkpatrick v. Butler**, 870 F.2d 276 (5th Cir. 1989), cert. denied, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

4

points raised in this, his second federal application, won Kirkpatrick a temporary stay of execution, but permanent relief ultimately was denied. Although it originally scheduled an evidentiary hearing on Kirkpatrick's claims, the state court denied relief without holding a hearing. The Louisiana Supreme Court again refused to hear the case.

The present federal habeas petition alleges multiple grounds for collateral relief. The claims raised can be summarized as follows: (1) the prosecution did not share exculpatory material with the defense, some of which flatly conflicted with the prosecution's presentation of the facts, suggesting that the prosecution suborned perjury or, at least, withheld exculpatory material despite a **Brady**[8] request; (2) the prosecution tampered with witnesses by improper threats; (3) Kirkpatrick received ineffective assistance of counsel; (4) the trial court erred in the sentencing phase when it refused to instruct the jury on the parolability of the defendant; and (5) death in the Louisiana electric chair is cruel and unusual punishment.

The district court, in a thorough and reasoned opinion withheld relief under the then-controlling standards. No evidentiary hearing was had. The court assumed the truth of the first claim, suppression and/or knowing use of perjured testimony, and further assumed that the claims were not barred by

---

[8]     **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state's appellate counsel candidly confirmed that Kirkpatrick's counsel had made a timely **Brady** request.

5

Kirkpatrick's failure to raise them in the first petition but denied relief, concluding that neither the conviction nor the sentence were tainted by the assumed misconduct.[9] The second claim, tampering with witnesses, was reviewed to determine whether a different outcome would have been reached had the tampering been disclosed -- the court answered the question in the negative. The third claim, ineffective assistance of counsel, was dismissed for abuse of the writ. The jury instruction, the fourth claim, was also dismissed for abuse of the writ and alternatively for lack of merit.[10] The final claim, that Louisiana's chosen method of execution was unconstitutional as applied, failed on its merits. Kirkpatrick timely appealed. On appeal we review the factual findings for clear error; mixed questions of fact and law generally receive independent review, and questions of law are reviewed *de novo*.[11]

## Analysis

---

[9] The court treated the report containing a prior inconsistent statement of witness Garrett, Radoste's neighbor, as a suppression issue rather than an issue relating to the knowing use of perjured testimony. The court may wish to reconsider this and other issues should an evidentiary base develop during the directed evidentiary hearing.

[10] The jury sent two notes to the trial judge inquiring as to the duration of a life sentence and the possibility of parole. The judge refused to give the instruction on parole. Such an instruction is not constitutionally mandated. **O'Bryan v. Estelle**, 714 F.2d 365, 389 (5th Cir. 1983), cert. denied sub nom. **O'Bryan v. McKaskle**, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

[11] **Baker v. Metcalfe**, 661 F.2d 391 (5th Cir. Unit B 1981), cert. denied, 456 U.S. 1011 (1982).

Kirkpatrick makes allegations, which are substantially supported by evidence not previously available to him, that raise serious questions about the reliability of the prosecution's evidence. Kirkpatrick claims that the prosecution knew: (1) that Radoste possessed substantial hardcore homosexual pornography of which Officer McKormick was aware; (2) that Radoste had a drawer full of rubber gloves, which are commonly used by homosexuals; (3) that Radoste's neighbor, David Garrett, did not see him when he claimed to or see him on crutches at any time;[12] and (4) that the crutch was used as a stage prop for the photograph. Kirkpatrick also claims that the prosecution tampered with witnesses by threats and coercion.

The absence of an evidentiary hearing in either the state or district court hampers our review of both the factual bases for Kirkpatrick's claims and their effect, if any, on the outcome of the trial. It is clear, however, from the affidavits of the first two officers on the scene that neither saw a bloody crutch next to Radoste's body or anywhere in Radoste's apartment. Moreover, they claim that Officer McKormick himself showed them a "stack of magazines that were filled with pictures of nude men." We focus on the evidence which was not available to Kirkpatrick on his first habeas petition.

---

[12] Apparently the testimony of Garrett was the only admissible evidence of Radoste's use of a crutch. Garrett's testimony could also have been discredited by an autopsy report indicating that spaghetti was not among the contents of the victim's stomach.

1.  Abuse of the writ

Before considering the merits of Kirkpatrick's claims, we perforce consider whether the issues are properly before us. The prosecution claims that Kirkpatrick's failure to raise these claims in his first habeas petition constitutes abuse of the writ. Rule 9(b) governing cases brought under 28 U.S.C. § 2254 provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted abuse of the writ.[13]

The Supreme Court's recent decision in **McCleskey v. Zant**[14] guides our analysis. In **McCleskey** the habeas petitioner complained of the admission of his statement to a cellmate. McCleskey alleged that the fellow prisoner was an agent of the state and that placing the agent in his cell violated his sixth amendment right to counsel as interpreted in **United States v. Massiah**.[15] He raised the claim in his first state habeas petition but omitted it from his first federal petition. It was not until his second federal habeas

_____

[13]    See also 28 U.S.C. § 2244(b) (". . . a subsequent application [by] such [a] person need not be considered by a court . . . unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court . . . is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.").

[14]    499 U.S. _____, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

[15]    377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

petition that McCleskey reurged the **Massiah** claim. The district court granted relief but the Eleventh Circuit reversed, finding error in the district court's failure to find an abuse of the writ.

On certiorari the Supreme Court affirmed, clarifying for the first time the standard to be employed to ascertain abuse of the writ. Under the regime announced in **McCleskey**, when there has not been a prior determination on the merits the government bears the initial burden of pleading and proving abuse of the writ; the habeas petitioner must then counter that claim.

In the instant case the government met its initial burden, but the district court assumed, for the purposes of its decision, that Kirkpatrick successfully established that he had not abused the writ with respect to his claims that the prosecution suborned perjury, withheld evidence, and tampered with witnesses. Equitable principles govern this decision and, ultimately, it rests in the sound discretion of the district court.[16] But that discretion is not completely unfettered; the district court must recognize abuse where it is evident. We must therefore determine whether the court abused its discretion by not finding abuse in Kirkpatrick's failure to raise these issues in his first federal petition.

Under the standards announced in **McCleskey**, abuse of the writ consists either of the deliberate withholding of claims or inexcusable neglect. The latter is applicable herein. The **McCleskey** court adopted the cause-and-prejudice standard for

---

[16] **McCleskey**, 111 S.Ct. at 1465, 113 L.Ed.2d at 538.

9

determining whether neglect is excusable. Under this standard, the habeas petitioner first must explain his failure to present the claim by some objective factor external to the defense which impeded counsel's efforts to raise the claim previously and must also demonstrate actual prejudice resulting from the error.[17]

Absent a showing of cause and prejudice, the failure to raise a claim in a prior habeas petition may be overlooked only when a constitutional violation probably has resulted in the conviction of one innocent of the crime. Finding cause and prejudice in the evidence presented by the two police officers, we need not reach the issue of actual innocence. We note, however, that Kirkpatrick's claims of self defense would establish a lack of criminal responsibility under the test announced in **Sawyer v. Whitley**.[18] On remand, the district court should examine the abuse issues in light of the new standards.

The claims of suppression and falsification of evidence were not raised in the first federal habeas petition for obvious reasons: the "'factual . . . basis . . . was not reasonably available to counsel.'"[19] Although Kirkpatrick's trial counsel made

---

[17] **McCleskey**.

[18] 945 F.2d 812 (5th Cir. 1991), aff'd, _____ U.S. _____, 112 S.Ct. 2514, 2522, 120 L.Ed.2d 269 (1992).

[19] **McCleskey**, 111 S.Ct. at 1470, 113 L.Ed.2d at 544 (quoting **Murray v. Carrier**, 477 U.S. at 488). The Court in **McCleskey** also recognized "interference by officials" as a cause for the failure to present claims in the previous habeas application. Unlike McCleskey, Kirkpatrick did not himself possess knowledge of the officers' identity or their knowledge of the events.

10

a **Brady** request before trial, the statements, indeed the very identity, of the first two officers on the murder scene, were not discovered at trial because the then-controlling state law would not permit discovery of the initial police report. That law has since been amended.[20] Notwithstanding, that report was not produced during the previous federal or state habeas proceedings.

While we are confident that the district court would have allowed discovery in the first habeas proceeding had counsel reason to request it, we recognize that in order to obtain discovery in habeas proceedings "good cause" must be shown.[21] Counsel could not establish good cause for the production of information of which he had no knowledge. The discovery rules do not permit the sort of fishing expedition that would have been necessary to locate the reports of the first two officers on the scene.[22] In short, we find much support for the district court's assumption that "cause" existed for Kirkpatrick's failure to raise this issue in the first federal habeas proceeding.

---

[20] In 1984 Louisiana amended its public records provisions to provide for public examination of initial police reports. La. R.S. 44:3A(4)(a) (West Supp. 1993). The amendment took effect on September 1, 1985; Kirkpatrick was tried in 1982 and the federal district court denied his first federal habeas application in 1984.

[21] Rule 6, 28 U.S.C. § 2254.

[22] As it is, counsel for Kirkpatrick explained at argument that he obtained the report by serendipity when a police official offered it in response to a request for other information.

11

We also agree with the district court's assumption that Kirkpatrick met his burden of proving actual prejudice. If the errors of which he complains are supported by the evidence adduced at the evidentiary hearing then Kirkpatrick will have confirmed that the prosecution presented falsified evidence and suppressed exculpatory evidence. The presentation of falsified evidence and the withholding of exculpatory evidence from the jury might have led to a different result not only with respect to the sentence imposed,[23] but also to the jury's consideration of Kirkpatrick's defense.

We therefore agree with the district court's preliminary assumption that Kirkpatrick did not abuse the writ by failing to raise these issues in his first federal habeas application.[24]

2. Falsification and suppression

We turn now to Kirkpatrick's allegations of falsification and suppression of evidence. While we are cognizant of the toll habeas wreaks on finality, we are also concerned that both fairness and the appearance of fairness be preserved, especially in light of the punishment assessed.[25] In our criminal justice system the

_____

[23]    During deliberations the jury sent out notes suggesting that they were inclined toward life imprisonment if parole were not possible. They were not informed that under Louisiana law there is no parole from a life sentence.

[24]    In light of **Sawyer**'s teachings, the district court may wish to revisit other issues previously deemed barred.

[25]    See **Morgan v. Illinois**, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

12

prosecutor has at his disposal the substantial resources of the government as well as considerable other advantages.  In exchange, that system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction.[26]

Kirkpatrick's claims, if true, raise serious questions about both the reality and appearance of fairness in his conviction and punishment.  We may not, absent an adequate factual record, sweep away these charges on the assumption that the jury would not have arrived at a different conclusion at either stage of the trial had they been told of the matters Kirkpatrick attributes to the prosecution.  As Kirkpatrick's counsel points out, the use of Officer McKormick's testimony with respect to Radoste's sexual preferences, and the introduction of the photograph depicting the crutches at the scene of the murder, may constitute knowing use of perjured testimony and false evidence.  The same may be true of the testimony of Julie Yarbrough, the only witness to testify that Kirkpatrick admitted shooting the victim, or David Garrett, who may not have seen the victim on crutches or at a time when the defense claimed that Radoste was with Kirkpatrick and Faulkner.  The cumulative effect of this scenario likewise is manifestly uncertain.[27]

---

[26]  **Imbler v. Pachtman**, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).  See also ABA Model Rules of Professional Conduct, Rules 3.2(a)(4), 3.4(a), (b), and (f), and 3.8, all of which Kirkpatrick claims to have been violated by the prosecution.

[27]  See **Derden v. McNeel**, 978 F.2d 1453 (5th Cir. 1992) (*en banc*).

13

Regardless of their label, Kirkpatrick's claims are serious and, at least at this stage, sufficiently supported. Whether they have firm grounding in reality remains to be seen. To the extent that they are supported, the critical question will be whether the prosecution simply withheld evidence or put on evidence it knew to be false. The withholding of exculpatory information in violation of **Brady** merits relief where the information is so material that the prosecution's withholding would deprive the defendant of a fair trial.[28]

We observe that different standards of materiality apply to **Brady** claims and claims that the prosecution has knowingly used perjured testimony or false evidence. The materiality standard for **Brady** claims, regardless of whether the defense made a specific or general request (or no request at all) for the withheld evidence prior to trial,[29] is as follows: "'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would be different. A "reasonable probability" is a probability sufficient

---

[28] **United States v. Bagley**, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

[29] **Bagley**, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494 (opinion of Blackmun, J., joined by O'Connor, J.); **James v. Whitley**, 926 U.S. 1433, 1439 (5th Cir. 1991); but see **United States v. Buchanan**, 891 F.2d 1436, 1441 (10th Cir. 1989).

14

to undermine confidence in the outcome.'"[30] Conversely, if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous: the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have <u>affected</u> the jury's verdict. . . ."[31]

Thus, should the evidence adduced support Kirkpatrick's claims of perjury, the proper question is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[32] Such a corruption of the truth-seeking process would strike at the confidence of the conviction and sentence. Moreover, given the unanimity required at the Louisiana punishment phase, the proper frame of reference, at least with regard to the punishment assessed, is whether the mind of one juror could have been changed with respect to the imposition of the sentence of death.[33] If, on the other hand, no misconduct appropriately is attributable to the prosecution, the court must consider the proper context of any **Brady** violations it finds.

---

[30] **James**, 926 F.2d at 1439 (quoting **Bagley**, 682 U.S. at 682).

[31] **Bagley**, 682 U.S. at 679 n.9 (<u>citing</u> **Napue v. Illinois**, 360 U.S. 264 (1959)) (emphasis added).

[32] **United States v. Agurs**, 427 U.S. at 103 (footnote omitted).

[33] Louisiana law requires unanimity in a jury's sentence of death. La. Code Crim. Proc. art. 905.6 (West 1984). We have frequently recognized the strategic value of relying on "residual doubt." <u>E.g.</u>, **Smith v. Black**, 904 F.2d 950 (5th Cir. 1990), <u>vacated</u>, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992).

We express no opinion about the veracity of any of Kirkpatrick's claims. That remains initially for the trial court. We do note that appellate counsel disagreed about the two officers on whose affidavits Kirkpatrick relies -- were they police officers or emergency medical technicians? Would that make a difference? These and other facts, and the assessment of credibility of the witnesses are, necessarily, to be resolved by the trial court after a hearing.[34] But resolve them we must before the ultimate punishment constitutionally may be imposed.

VACATED and REMANDED.

---

[34] **Streetman v. Lynaugh**, 812 F.2d 950 (5th Cir. 1987). See also **Townsend v. Sain**, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (listing circumstances mandating a hearing) and its partial codification at 28 U.S.C. § 2254(d).