**UNITED STATES of America**

v.

**Len DAVIS & Paul Hardy**

No. CR. A. 94–381.

United States District Court, E.D. Louisiana.

Feb. 2, 2001.

Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, Len Davis, New Orleans, LA, Carol Anne Kolinchak, Herbert Victor Larson, Jr., Denise M. LeBoeuf, New Orleans, LA, for Len Davis & Paul Hardy.

*ORDER AND REASONS*

BERRIGAN, District Judge.

The Court requested counsel for all parties to brief the issue of whether the defendants should be permitted to challenge the sufficiency of the evidence of guilt in their re-sentencing hearings. Specifically, the Court asked for help in deciding whether "residual doubt" regarding guilt, including

any element of the offense necessary for conviction, was an appropriate mitigating factor that could be presented and argued to the jury, either as a matter of right or as an exercise of judicial discretion. "Residual doubt" has been defined as "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'" *Franklin v. Lynaugh*, 487 U.S. 164, 188, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). Having considered the record, the memoranda, the oral argument and the law, the Court concludes that "residual doubt" is an appropriate consideration in mitigation and it is not proscribed by law. The defendants will therefore be permitted to raise the issue of residual doubt in the presentation of the penalty phase. Likewise, the Court will include, if requested, a residual doubt instruction in the Court's instructions to the jury.

While the issue of "residual doubt" has been discussed extensively in both state and federal courts in connection with capital cases in state courts, no clear consensus has evolved as to whether defendants have an absolute "right" to present such a defense. Nevertheless, "residual doubt" arguments have frequently been made in state capital trials. In the Fifth Circuit, and in our most closely related sister circuit, the Eleventh, these arguments have been accepted as a legitimate defense strategy and have not been proscribed by any federal law. With regard to 18 U.S.C. § 3592, the applicable federal statute for these proceedings, the Court also concludes that the concept of "residual doubt" falls within the scope of mitigating factors authorized. The Court has considered the policy reasons, for and against, permitting a "residual doubt" argument in the penalty phase and concludes the argument should be permitted.

*Supreme Court Jurisprudence*

■ The Supreme Court has held that "the Eighth and Fourteenth Amendments require that the sentence ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). See also *Eddings v. Oklahoma*, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Accordingly, in order for a mitigating factor to be constitutionally ordained, it must relate to the defendant's character, record or "the circumstances of the offense." The first issue, then, is whether under constitutional law "residual doubt" relates to any of those categories, most particularly "the circumstances of the offense."

The Supreme Court has discussed "residual doubt" primarily in two decisions. In *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), it was addressing the claim that disqualifying jurors who were opposed to the death penalty from the guilt phase of a bifurcated capital trial unfairly skewed the panel towards conviction. As part of that discussion, the Supreme Court made the following observations regarding "residual doubt:"

Another interest identified by the State in support of its system of unitary juries is the possibility that, in at least some capital cases, the defendant might benefit at the sentencing phase of the trial from the jury's "residual doubts" about the evidence presented at the guilt phase. The dissenting opinion in the Court of Appeals also adverted to this interest:

"[A]s several courts have observed, jurors who decide both guilt and penalty are likely to form residual doubts or 'whimsical' doubts ... about the evidence so as to bend them to decide against the death penalty. Such residual doubt has been recognized as an extremely effective argument for defendants in capital cases. To divide the responsibility ... to some degree would eliminate the influence of such

doubts." 758 F.2d. at 247–248 (J. Gibson, J., dissenting) (citations omitted).

Justice MARSHALL's dissent points out that some States which adhere to the unitary jury system do not allow the defendant to argue "residual doubts" to the jury at sentencing. But while this may justify skepticism as to the extent to which such States are willing to go to allow defendants to capitalize on "residual doubts," it does not wholly vitiate the claimed interest.

*Id.*, 476 U.S. at 181, 106 S.Ct. 1758.

On the direct issue of whether "residual doubt" is a constitutionally sanctioned mitigating factor, the significant Supreme Court decision is *Franklin*. The petitioner, sentenced to death in state court, claimed the jury instructions given in the penalty phase didn't allow the jury to consider "residual doubt" as to guilt as a mitigating factor in sentencing.

At the outset, we note that this Court has never held that a capital defendant has a constitutional right to an instruction telling the jury to revisit the question of his identity as the murderer as a basis for mitigation. Petitioner suggests that our discussion of the "residual doubt" question in Lockhart v. McCree, [citation omitted], supports his position that he has such an entitlement . . . But all that this aspect of the Lockhart opinion stands for is the simple truism that where "States are willing to go to allow defendants to capitalize on 'residual doubts,'" such doubts will inure to the defendant's benefit. [citation omitted] Lockhart did not endorse capital sentencing schemes which permit such use of "residual doubts," let alone suggest that capital defendants have a right to demand jury consideration of "residual doubts" in the sentencing phase. Indeed, the Lockhart dissent recognized that there have been only a "few times in which any legitimacy has been given" to the notion that a convicted capital defendant has a right to argue his innocence during the sentencing phase. [citation omitted] The dissent also noted that this Court has not struck down the practice in some States of prohibiting the consideration of "residual doubts" during the punishment trial. [FN6] Ibid.

—————

FN6. Finding a constitutional right to rely on a guilt-phase jury's "residual doubts" about innocence when the defense presents its mitigating case in the penalty phase is arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence—but not the underlying conviction—is struck down on appeal. [citations omitted] In fact, this Court has, on several previous occasions, suggested such a method of proceeding on remand. [citation omitted] Moreover, petitioner himself, in suggesting the appropriate relief in this case, asked only that he be "resentenced in a proceeding that comports with the requirements of Lockett"—not that he be retried in full so as to have the benefit of any potential guilt-phase "residual doubts." . . . In sum, we are quite doubtful that such "penalty-only" trials are violative of a defendant's Eighth Amendment rights. Yet such is the logical conclusion of petitioner's claim of a constitutional right to argue "residual doubts" to a capital sentencing jury.

Our edict that, in a capital case, " 'the sentence . . . [may] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense,' " [citation omitted], in no way mandates reconsideration by capital juries, in the sentencing phase, of their "residual doubts" over a defendant's guilt. Such lingering doubts are not over any aspect of petitioner's "character," "record," or a "circumstance of the offense." This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor.

*Franklin*, 487 U.S. at 172–174, 108 S.Ct. 2320.

The Supreme Court, however, did not base its holding in *Franklin* on the above. Rather, it held that the trial court's instructions did not in fact hinder the petitioner from arguing "residual doubt" in the penalty phase, nor did the trial court's

instructions prevent the jury from taking it into consideration.

In a concurring opinion, Justice O'Connor met the constitutional claim directly:

In my view, petitioner's "residual doubt" claim fails, not because the Texas scheme allowed for consideration of "residual doubt" by the sentencing body, but rather because the Eighth Amendment does not require it. Our cases do not support the proposition that a defendant who has been found to be guilty of a capital crime beyond a reasonable doubt has a constitutional right to reconsideration by the sentencing body of lingering doubts about his guilt. We have recognized that some States have adopted capital sentencing procedures that permit defendants in some cases to enjoy the benefit of doubts that linger from the guilt phase of the trial, [citation omitted], but we have never indicated that the Eighth Amendment requires States to adopt such procedures. To the contrary, as the plurality points out, we have approved capital sentencing procedures that preclude consideration by the sentencing body of "residual doubts" about guilt. [citation omitted]

Our decisions mandating jury consideration of mitigating circumstances provide no support for petitioner's claim because "residual doubt" about guilt is not a mitigating circumstance. We have defined mitigating circumstances as facts about the defendant's character or background, or the circumstances of the particular offense, that may call for a penalty less than death. [citations omitted] "Residual doubt" is not a fact about the defendant or the circumstances of the crime. It is instead a lingering uncertainty about facts, a state of mind that exists somewhere between "beyond a reasonable doubt" and "absolute certainty." Petitioner's "residual doubt" claim is that the States must permit capital sentencing bodies to demand proof of guilt to "an absolute certainty" before imposing the death sentence.

Nothing in our cases mandates the imposition of this heightened burden of proof at capital sentencing. *Franklin,* 487 U.S. at 187–188, 108 S.Ct. 2320.

While the Supreme Court in *Franklin* did not formally hold that the Eighth Amendment does not require a "residual doubt" jury instruction, this was the clear message of the opinion. Likewise clear is the Supreme Court's conclusion that "residual doubt" is not related to a "circumstance of the offense" as understood by its prior constitutional jurisprudence on mitigating circumstances.

This Court, therefore, begins with the assumption that those two conclusions above are, in effect, holdings of the Supreme Court and therefore shall be considered binding upon this Court. Accordingly, this Court finds that the defendants do not have a "constitutional right" to present "residual doubt" as a mitigating factor in the penalty phase of this case.

What is left unanswered, however, is whether "residual doubt" arguments/instructions are entirely prohibited or whether they can be and are authorized by other than constitutional mandate, such as a statute.

*The Fifth Circuit and "Residual Doubt."*

■ The Fifth Circuit has developed substantial caselaw on "residual doubt" over the years in federal habeas petitions filed by prisoners convicted and sentenced to death in state courts, under state statutes. The Court has consistently acknowledged "residual doubt" as a legitimate mitigating factor in these cases, *Franklin* notwithstanding.

In a frequently cited pre-*Franklin* case, *Smith v. Balkcom,* 660 F.2d 573 (5th Cir. 1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982), the Fifth Circuit acknowledged the existence and significance of "residual doubt" in the sentencing phase of a capital case.

The fact that jurors have determined guilt beyond a reasonable doubt does

not necessarily mean that no juror entertained any doubt whatsoever. There may be no reasonable doubt based upon reason and yet some genuine doubt exists. It may reflect a mere possibility; it may be but the whimsy of one juror or several. Yet this whimsical doubt this absence of absolute certainty can be real.

The capital defendant whose guilt seems abundantly demonstrated may be neither obstructing justice nor engaged in an exercise in futility when his counsel mounts a vigorous defense on the merits. It may be proffered in the slight hope of unanticipated success; it might seek to persuade one or more to prevent unanimity for conviction; it is more likely to produce only whimsical doubt. Even the latter serves the defendant, for the juror entertaining doubt which does not rise to reasonable doubt can be expected to resist those who would impose the irremedial penalty of death.

*Id.,* 660 F.2d at 580–581.

Then, in a footnote, the Court added the following observation:

We have not overlooked the argument that the influence of such whimsical doubt at the penalty phase is likely to be minimal in light of the highly structured procedure for penalty determination in a capital case ... Although the jury is instructed to find on the basis of the evidence the presence or absence of mitigating circumstances or statutory aggravating circumstances, we cannot conclude that compromise does not play a role in the jury's deliberations ... (citation omitted). The statutory scheme for capital sentencing is designed to channel the jury's discretion, not to eliminate all interaction among the jurors in which one juror attempts to convince others, based perhaps only upon the presence of whimsical doubt, to vote against the death penalty ...

*Id.,* 660 F.2d at 581, fn. 23.

In another pre-*Franklin* case, *Lindsey v. King,* 769 F.2d 1034 (5th Cir.1985), the

Fifth Circuit reversed a death penalty conviction because the prosecution failed to disclose favorable evidence to the defense regarding the identification of the assailant.

We cannot and should not attempt to retry the case in our imaginations. We can say, however, on the basis of our courtroom experience, that the evidence withheld by the prosecutor in today's case carried within it the potential both for the destruction of Alexander's identification of Lindsey and the discrediting, in some degree, of the police methods employed in assembling the case against him. That done, given the circumstances that we have recounted of poor lighting, distance, shortness of time to view the assailant, a single unshaken identifying witness, another suspect of very similar appearance on the scene, *the degree of proof required for conviction, and—perhaps most telling—the degree of conviction in the jurors requisite to imposing the penalty of death, we find our confidence in the results of the trial undermined.*

Whether it is reasonably probable that a different result might have obtained had the evidence been disclosed is a question of agonizing closeness. This is a capital case, however, and one moreover in which our reading of the evidence shows there is a real possibility that the wrong man is to be executed. In such a case, if ever, petitioner should receive the benefit of the doubt.

*Id.,* 769 F.2d at 1043 (emphasis added).

A few months after the *Franklin* decision, the Fifth Circuit considered a claim that the prosecutor withheld exculpatory evidence in *Jones v. Butler,* 864 F.2d 348, 356 (5th Cir.1988), *cert. denied,* 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989). The Fifth Circuit concluded that the evidence, even if improperly withheld, simply was not material enough to have had any impact on the conviction. It then

turned briefly to the possible impact on sentencing, citing *Franklin.*

Finally, Jones argues that the allegedly suppressed evidence would have created a residual doubt at the sentencing phase of his trial and, therefore, its nondisclosure requires a reversal of his death sentence. This claim must fail, not only because we have found that the allegedly suppressed evidence is nonmaterial, but also because a defendant has no constitutional right to have such residual doubts considered in sentencing.

*Id.,* 864 F.2d at 356.

The actual finding in *Franklin* was that a defendant in a capital case is not constitutionally entitled to a residual doubt jury *instruction.* In *Jones,* the Fifth Circuit restricted the concept even more by declaring that a defendant had no right to even *present* a residual doubt argument. However, as will be noted below, the Fifth Circuit expressly retracted this restriction in a decision two years later. *Smith v. Black,* 904 F.2d 950 (5th Cir.1990), *cert. granted & judgment vacated on other grounds,* 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992).

Notable also, the day after the *Jones* decision, a different panel of the Fifth Circuit issued their decision in *Stringer v. Jackson,* 862 F.2d 1108 (5th Cir.1988), *cert. granted & judgment vacated on other grounds,* 494 U.S. 1074, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990). In that case, the state prisoner complained that his attorney, Wilkins, was ineffective in the penalty phase for failing to put on character evidence in mitigation. In rejecting the claim, the Fifth Circuit stated that:

> Stringer's only hope was to get at least one juror to have enough misgiving regarding his guilt to block the death penalty. Wilkins attempted to do just that by arguing that he and his client had to accept the verdict of guilty but that any qualms a juror might have regarding Stringer's guilt should be resolved against imposing the death penalty. On the record before us, we are in no posi-

tion to say that this was not the best that could be done for Stringer.

*Id.,* 862 F.2d at 1116. Thus, counsel was considered competent in relying on a "residual doubt" argument in the penalty phase.

Two years after *Franklin,* the Fifth Circuit revisited "residual doubt" and *Jones* in the context of the prosecutor withholding impeachment evidence affecting the eyewitness identification of the petitioner as the assailant. In *Smith,* the Fifth Circuit concluded the undisclosed evidence wasn't material enough, in light of the other evidence of guilt, to have impacted the conviction. But that wasn't the end of the Court's discussion.

> Smith also argues that the nondisclosure of evidence affected the sentencing phase by contributing to the removal of residual doubt. The trial court rejected Smith's proffer of an instruction detailing residual doubt as a mitigating circumstance, but its instructions did permit the jury to entertain doubt in that fashion, and Smith's trial counsel repeatedly stressed the possible innocence of his client in his closing at the sentencing phase. We have previously recognized such reargument of guilt as a sound strategy. [citation omitted] Although Smith was not constitutionally entitled to instruct the jury to consider such residual doubt, [citation omitted], the Supreme Court has subsequently recognized a difference between rules relating to what mitigating evidence the jury may consider and rules relating to instructing the jury how to consider such evidence. [citation omitted] Here the claim is still simpler: Smith asks not for a revision of the court's determination of what evidence he may present to the jury, but only that we assess the materiality of the Brady violation in light of the mitigating case actually presented for him. *We agree that nondisclosure of impeachment evidence may be relevant to the punishment phase, see Lindsey v. King, 769 F.2d at 1042, and*

reject the intimation that this aspect of Smith's claim may have no constitutional footing. Cf. Jones v. Butler, 864 F.2d 348, 357 (5th Cir.1988) (alternative holding), cert. denied, 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989).(emphasis added).

Smith, 904 F.2d at 968–969 (emphasis added).

This Smith decision is significant not just for its continuing recognition of the "residual doubt" argument but for its express repudiation of its alternative holding in Jones that "a defendant has no constitutional right to have such residual doubts considered in sentencing." Jones, 864 F.2d at 356.

In Kirkpatrick v. Whitley, 992 F.2d 491 (5th Cir.1993), the defendant Kirkpatrick claimed self-defense in the guilt phase of trial. An issue in his habeas petition was whether the prosecutor knowingly used perjured testimony that undercut his claim. In remanding for an evidentiary hearing, the Fifth Circuit did not limit the significance of the disputed evidence to how it might have affected the jury's decision as to guilt:

> Moreover, given the unanimity required at the Louisiana punishment phase, the proper frame of reference, at least with regard to the punishment assessed, is whether the mind of one juror could have been changed with respect to the imposition of the sentence of death.

Id., 992 F.2d at 497.

This was followed by a footnote in the decision:

> Louisiana law requires unanimity in a jury's sentence of death. [citation omitted]. We have frequently recognized the strategic value of relying on "residual doubt." [citation omitted].

Id., 992 F.2d at 497, fn. 33.

In Andrews v. Collins, 21 F.3d 612 (5th Cir.1994), cert. denied, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995), the petitioner complained that his counsel was ineffective at the penalty phase for failing to investigate and present mitigating evidence. In rejecting the claim, the Fifth Circuit noted in a footnote:

> Moreover, the record reflects that counsel, during the punishment stage, relied solely upon what he believed to be the jury's residual doubts about the evidence presented at the guilt phase of Andrews' trial. Such a strategy "has been recognized as an extremely effective argument for defendants in capital cases." [citations omitted]

Id., 21 F.3d at 624, fn. 21.

Finally, a year and a half ago, in Moore v. Johnson, 194 F.3d 586 (5th Cir.1999), opinion superseded on rehearing, 194 F.2d 586, the Fifth Circuit again addressed residual doubt and said "(t)his Court has recognized that, in an appropriate capital case, counsel's decision to rely upon the jury's residual doubt about the defendant's guilt may be not only reasonable, but highly beneficial, to a capital defendant." Id., 194 F.3d at 618.

Within the Fifth Circuit, then, a "residual doubt" argument is not proscribed.

### The Eleventh Circuit

The sister circuit to the Fifth Circuit, the Eleventh Circuit likewise has a long history of acknowledging "residual doubt" as a valid factor in the penalty phase of capital cases. In the pre-Franklin decision of Smith v. Wainwright, 741 F.2d 1248 (11th Cir.1984), cert. denied, 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985), the petitioner was convicted of capital charges largely on the testimony of one particular witness and that witness' wife. These individuals had made a number of pretrial statements which were inconsistent with their trial testimony. Trial counsel had these statements but did not use them to impeach the witnesses at trial. In remanding for an evidentiary hearing on ineffective assistance of counsel, the Eleventh Circuit stated:

> The failure of counsel to use the statements to impeach the Johnsons may not only have affected the outcome of the

guilt/innocence phase, it may have changed the outcome of the penalty trial. As we have previously noted, jurors may well vote against the imposition of the death penalty due to existence of "whimsical doubt." ... In this case, use of Wesley and Patricia Johnson's prior inconsistent statements might have created a whimsical doubt that would discourage the court and advisory jury from recommending the death penalty.

*Id.,* 741 F.2d at 1255. The Eleventh Circuit cited the Fifth Circuit decision of *Smith v. Balkcom* as its authority. In *King v. Strickland,* 748 F.2d 1462 (11th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301 (1985), the state petitioner argued ineffective assistance of counsel in the penalty phase of his capital case. The Eleventh Circuit agreed, finding that the failure to present character witnesses in mitigation and counsel's weak closing argument deprived the petitioner of competent counsel. As part of the rationale, it noted:

King was convicted on circumstantial evidence, which however strong leaves room for doubt that a skilled attorney might raise to a sufficient level that, though not enough to defeat conviction, might convince a jury and a court that the ultimate penalty should not be exacted, lest a mistake may have been made.

*Id.,* 748 F.2d at 1464.

While the *Smith v. Wainwright* and *King* decisions predated the Supreme Court's decision in *Franklin,* the Eleventh Circuit has continued to recognize "residual doubt" as a compelling factor in the penalty phase. In the 1989 decision of *Stewart v. Dugger,* 877 F.2d 851 (11th Cir.1989), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990), the Eleventh Circuit dealt with a petitioner who claimed his counsel was constitutionally ineffective because he continued to argue the petitioner's innocence in the penalty phase of the trial. In rejecting the claim, the Eleventh Circuit found that:

Trial counsel made a strategic decision that in light of the atrocious nature of the offense, Stewart's only chance of avoiding the death penalty was if some seed of doubt, even if insufficient to constitute reasonable doubt, could be placed in the minds of the jury. This court has repeatedly recognized the impact such an argument may have upon a jury. [citations omitted] Every court which has ruled upon Stewart's claims has recognized that under the circumstances of this rape and murder, defense counsel had little with which to work in arguing against death. Trial counsel cannot be faulted for attempting to make the best of a bad situation.

Defense counsel presented a logical and well-constructed argument inviting the jury to believe that the defendant left the victim alive and another party, said to be a dope addict, committed the murder. This was a classic attempt to create lingering doubt in the minds of jurors as to Stewart's guilt. [citations omitted] Counsel was not constitutionally deficient for devoting his resources, both in terms of argument time and pretrial investigation, to such a strategy.

*Id.,* 877 F.2d at 856.

In *Tarver v. Hopper,* 169 F.3d 710 (11th Cir.1999), a decision just two years ago, defense counsel's strategy was to "create sufficient residual doubt about Tarver's guilt during trial and sentencing to add, in reality, another mitigating factor to the jury's sentencing deliberations." *Id.,* 169 F.3d at 715.

A lawyer's time and effort in preparing to defend his client in the guilt phase of a capital case continues to count at the sentencing phase. Creating lingering doubt has been recognized as an effective strategy for avoiding the death penalty. We have written about it. See, e.g., Stewart v. Dugger, 877 F.2d 851, 855–56 (11th Cir.1989). In addition, a comprehensive study on the opinions of jurors in capital cases concluded:

"Residual doubt" over the defendant's guilt is the most powerful "mitigating" fact.—[The study] suggests that the best thing a capital defendant can do to improve his chances of receiving a life sentence has nothing to do with mitigating evidence strictly speaking. The best thing he can do, all else being equal, is to raise doubt about his guilt.

Stephen P. Garvey, Aggravation and Mitigation in Capital Cases: What do Jurors Think?, 98 Colum.L.Rev. 1538, 1563 (1998) (footnotes omitted); see William S. Geimer & Jonathan Amsterdam, Why Jurors Vote Life or Death: Operative Factors in Ten Florida Death Penalty Cases, 15 Am.J.Crim.L. 1, 28 (1988) ("[t]he existence of some degree of doubt about the guilt of the accused was the most often recurring explanatory factor in the life recommendation cases studied."); see also Jennifer Treadway, Note, "Residual Doubt" in Capital Sentencing: No Doubt it is an Appropriate Mitigating Factor, 43 Case W.Res. L.Rev. 215 (1992). Furthermore, the American Law Institute, in a proposed model penal code, similarly recognized the importance of residual doubt in sentencing by including residual doubt as a mitigating circumstance. So, the efforts of Tarver's lawyer, during trial and sentencing, to create doubt about Tarver's guilt may not only have represented an adequate performance, but evidenced the most effective performance in defense to the death penalty.

*Id.*, 169 F.3d at 715–716.

Finally, the Eleventh Circuit, just six months ago, again acknowledged the validity of this strategy in the penalty phase. *Chandler v. United States*, 218 F.3d 1305 (11th Cir.2000), *pet. for cert. filed*, (Oct. 19, 2000) (No. 00–6745). Significantly, *Chandler* involved a federal death penalty conviction and sentence, not a habeas petition from state court. The petitioner complained his counsel was ineffective, in part for pursuing a "residual doubt" strategy in the penalty phase. With regard to that claim, the Court found as follows:

Trial counsel focused on obtaining an acquittal and then, at sentencing, on lingering doubt. (footnote omitted). This defense was a reasonable one. (footnote omitted). We have said before that focusing on acquittal at trial and then on residual doubt at sentencing (instead of other forms of mitigation) can be reasonable. See Tarver v. Hopper, 169 F.3d 710, 715–16 (11th Cir.1999). Especially when—as in this case—the evidence of guilt was not overwhelming, [FN28] we expect that petitioners can rarely (if ever) prove a lawyer to be ineffective for relying on this seemingly reasonable strategy to defend his client.

FN28. We have accepted that residual doubt is perhaps the most effective strategy to employ at sentencing. See Tarver, 169 F.3d at 715–16 (citing law review study concluding that "the best thing a capital defendant can do to improve his chances of receiving a life sentence ... is to raise doubt about his guilt"). Counsel cannot be held to be ineffective when he has taken a line of defense which is objectively reasonable. The jury in this case was instructed at the guilt phase this way: "[I]t is not necessary that the defendant's guilt be proven beyond all possible doubt. It is only required that the Government's proof exclude any reasonable doubt concerning the defendant's guilt." As this instruction shows, the law recognizes that jurors who have found a person guilty of a crime may well still have doubt about his true guilt. Thus, the law itself points to and lays the foundation for a good argument based on lingering doubt when the jury is later asked to impose death, the ultimate and most irremediable punishment. Nothing about this argument signals submissiveness or fatalism; stressing residual doubt is a straightforward and sound defense.

*Id.*, 218 F.3d at 1320.

As with the Fifth Circuit, "residual doubt" arguments are clearly not proscribed in the Eleventh Circuit. The next issue is whether "residual doubt" is proscribed by statute.

*Statutory Construction*

█ The penalty phase statute applicable to this case is 18 U.S.C. § 3592. With

regard to mitigating factors, it reads as follows:

(a) Mitigating factors.—In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:

(1) Impaired capacity.—The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

(2) Duress.—The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

(3) Minor participation.—The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) Equally culpable defendants.—Another defendant or defendants, equally culpable in the crime, will not be punished by death.

(5) No prior criminal record.—The defendant did not have a significant prior history of other criminal conduct.

(6) Disturbance.—The defendant committed the offense under severe mental or emotional disturbance.

(7) Victim's consent.—The victim consented to the criminal conduct that resulted in the victim's death.

(8) Other factors.—Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

The most notable aspect of the statute is the introductory statement. The finder of fact (1) "shall" consider (2) "any mitigating factor, (3) including the following." First, the jury "shall" or *must* consider the mitigating factors; it is obligatory, not discretionary. Second, the fact finder must consider "any" mitigating factor. There is no qualification or limitation other than the factor "mitigate" against a sentence of death. Third, "(I)ncluding the following" means the subsequent list is not exclusive, but is instead illustrative. The eight identified factors are examples of specific factors that, if supported by the evidence, mitigate against the death penalty. Most significantly for the issue here, subhead (8) which refers to other factors "in the defendant's background, record, or character or any other circumstance of the offense" is a *sub* category of "any mitigating factor" rather than being the outer boundaries of what may be considered as mitigating. What 18 U.S.C.A. § 3592 allows is substantially broader than what the Supreme Court has declared to be the minimal requirements under the Constitution. According to the Supreme Court, the Eighth Amendment demands consideration only for those mitigating factors that concern the defendant's "character or record and any of the circumstances of the offense ..." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Under the statute, on the other hand, the Supreme Court's constitutional minimum is simply subhead(8) of a non-exclusive list. The statute demands the fact finder consider "any mitigating" factor ... period.[1]

The Ohio Supreme Court performed a similar statutory analysis in deciding that the Ohio statutes proscribed the "residual doubt" argument. The Ohio statute is the converse of the federal statute. Ohio law, R.C. 2929.04(B) states in its introduction

---

**1.** This Court actually considers "residual doubt" to be a factor that clearly concerns or is related to the "circumstances of the offense", the Supreme Court interpretation notwithstanding. Nevertheless, in light of the overall structure of the statute, it is not necessary to decide whether 18 U.S.C.A. § 3592(a)(8) is broader than the Eighth Amendment minimum.

that the jury shall consider in mitigation "the nature and circumstances of the offense, the history, character, and background of the offender." This parallels the minimal constitutional requirements as set forth by the Supreme Court. But unlike the federal statute, this language is in the introduction, rather than simply a subhead factor. The Ohio statute then follows with listed examples, such as duress and lack of a prior criminal history. The last *subfactor*, R.C. 2929.04(B)(7) states: "(a)ny other factors that are relevant to the issue of whether the offender should be sentenced to death." In *State v. McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112 (1997), *cert. denied*, 525 U.S. 831, 119 S.Ct. 85, 142 L.Ed.2d 66 (1998), the Supreme Court of Ohio considered whether "residual doubt" fell within the statute. The answer was "no." The Ohio court cited *Franklin* for the finding that "residual doubt" did not relate to a defendant's character, record, or any circumstances of the offense. It then looked at the structure of the Ohio statute and found that:

> (residual doubt) cannot be considered under the catchall factor of R.C. 2929.04(B)(7). That is because R.C. 2929.04(B)(7) must be read in relation to R.C. 2929.04(B), and allows consideration only of those other factors relevant to the issue of whether the offender should be sentenced to death, that is, only those factors relating to the nature and circumstances of the offense, and the history, character, and background of the offender. Watson, 61 Ohio St.3d at 19, 572 N.E.2d at 112. Residual or lingering doubt as to the defendant's guilt or innocence is not a factor relevant to the imposition of the death sentence because it has nothing to do with the nature and circumstances of the offense or the history, character, and background of the offender.

*Id.*, 686 N.E.2d at 1122–1123.

18 U.S.C. § 3592 has the reverse structure. The broad language "any mitigating factor" is the overall umbrella, with the limiting language of the Supreme Court's decisions simply a subcategory.

The California death penalty statute has a structure different from either the federal or the Ohio statute. Cal.Penal Code § 190.3. Under the California statute, there is no umbrella introductory factor; rather the law simply declares that the jury "shall take into account any of the following factors if relevant" and then lists eleven subfactors. The first one includes "The circumstances of the crime of which the defendant was convicted in the present proceeding ..." Cal.Penal Code § 190.3(a). The next nine are specific factors, such as age of the defendant, duress, etc. The last factor is "Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime." Cal.Penal Code § 190.3(k). The California courts have repeatedly cited these two provisions as supporting a "residual doubt" argument in mitigation in the penalty phase. *People v. Earp*, 20 Cal.4th 826, 85 Cal.Rptr.2d 857, 978 P.2d 15 (1999), *cert. denied*, 529 U.S. 1005, 120 S.Ct. 1272, 146 L.Ed.2d 221 (2000); *People v. Musselwhite*, 17 Cal.4th 1216, 74 Cal. Rptr.2d 212, 954 P.2d 475 (1998) (as modified on denial of rehearing June 24, 1998), *cert. denied*, 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 668 (1999);. *People v. Sanchez*, 12 Cal.4th 1, 47 Cal.Rptr.2d 843, 906 P.2d 1129 (1995), (as modified on denial of rehearing Feb. 21, 1996), *cert. denied*, 519 U.S. 835, 117 S.Ct. 108, 136 L.Ed.2d 61 (1996). It is even error if the trial judge disallows evidence material to the issue. *People v. Hawkins* (1995) 10 Cal.4th 920, 42 Cal.Rptr.2d 636, 897 P.2d 574, 601 (1995) (as modified on denial of rehearing Oct. 18, 1995), *cert. denied*, 517 U.S. 1193, 116 S.Ct. 1685, 134 L.Ed.2d 786 (1996) (and cases cited therein).

It is also notable that several of the other subcategories of 18 U.S.C. § 3592 include an implicit "residual doubt" element: § 3592(1) impaired capacity, § 3592(2) duress and § 3592(3) minor participation. All require consideration of

those factors as mitigation "regardless" of whether the impaired capacity/duress/minor participation was or was not sufficient "as to constitute a defense to the charge." So even though the jury may be convinced beyond a reasonable doubt that the impairment, duress or minor participation level wasn't enough to render a "not guilty" verdict, those same failed "defenses" must nonetheless be considered in mitigation of penalty. Defendant Davis, for example, has claimed as a defense that the conduct for which he was convicted did not occur "under color of law" because he did not use his office for its commission. That defense was rejected by the jury. Nonetheless, a jury could conclude that while he used his office sufficiently to fulfill the element of the offense, its use was otherwise minor, calling for mitigation of penalty.[2]

Opponents to allowing a "residual doubt" argument in the penalty phase claim it is illogical, since the guilt of the defendant is established by conviction. A defendant cannot be just "a little bit guilty." *Buford v. State*, 403 So.2d 943, 953 (Fla.1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). This argument overlooks the reality that mistakes are made and that standards of proof are simply reflections of a balancing of societal values, and those values are different, and the margins of permissible error are different, depending on the type of proceeding involved.

> First, in a judicial proceeding in which there is a dispute about the facts of some earlier event, the factfinder cannot acquire unassailably accurate knowledge of what happened. Instead, all the factfinder can acquire is a belief of what probably happened. The intensity of this belief—the degree to which a factfinder is convinced that a given act actually occurred—can, of course, vary. In this regard, a standard of proof represents an attempt to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. Although the phrases 'preponderance of the evidence' and 'proof beyond a reasonable doubt' are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions.
>
> A second proposition, which is really nothing more than a corollary of the first, is that the trier of fact will sometimes, despite his best efforts, be wrong in his factual conclusions. In a lawsuit between two parties, a factual error can make a difference in one of two ways. First, it can result in a judgment in favor of the plaintiff when the true facts warrant a judgment for the defendant. The analogue in a criminal case would be the conviction of an innocent man. On the other hand, an erroneous factual determination can result in a judgment for the defendant when the true facts justify a judgment in plaintiff's favor. The criminal analogue would be the acquittal of a guilty man.

*In re Winship*, 397 U.S. 358, 370–371, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

With regard to convicting those guilty of crimes, society must balance the need to protect the innocent from wrongful conviction against the need to protect society from criminal predators. Proof beyond a reasonable doubt is the standard chosen to strike that particular balance. More is required than proof by a preponderance of the evidence, and less is required than proof beyond all possible doubt. The bal-

---

**2.** An example of great abuse of office would be that described in *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Deputy Sheriff Price detained the three civil rights workers in jail, then released them late at night. He then intercepted them out on the highway, put them in the official automobile of the sheriff's department, then took them to a place on an unpaved road where they were murdered.

ance is tipped in favor of the criminally accused, because our society perceives "that it is far worse to convict an innocent man than to let a guilty man go free." *Id.,* 397 U.S. at 372, 90 S.Ct. 1068 (Harlan, J., concurring).

> The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt. As we said in *Speiser v. Randall,* supra, 357 U.S. at 525–526, 78 S.Ct. at 1342: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of *** persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of *** convincing the factfinder of his guilt.'

*Id.,* 397 U.S. at 363–364, 90 S.Ct. 1068.

Nevertheless, being convicted "beyond a reasonable doubt" does not mean a person is in fact guilty. Innocent people have been convicted and many, hopefully most, were ultimately exonerated. This is possible as long as the person is alive, even if imprisoned. Capital punishment does not allow for that correction. The United States Supreme Court has acknowledged repeatedly that "death as a punishment is unique in its severity and irrevocability." *Gregg v. Georgia,* 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Corbitt v. New Jersey,* 439 U.S. 212, 217, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). "It is an extreme sanction, suitable to the most extreme of crimes." *Gregg,* 428 U.S. at 187, 96 S.Ct. 2909.

> ... the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more form life imprisonment than a 100–year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

*Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

Mistakes have been made in condemning innocent people to death. In Illinois, since 1987, the state has executed twelve people. In that same time period, thirteen other Death Row inmates have been freed because subsequent developments in their cases established their innocence, despite having been tried, convicted and sentenced to death. *See* David Horan, *The Innocence Commission: An Independent Review Board for Wrongful Convictions,* 20 N.Ill.U.L.Rev. 91 (2000). Just a little over a month ago, two condemned inmates in Louisiana, Michael Ray Graham, Jr. and Albert Ronnie Burrell, were released after years on Death Row, having been convicted, sentenced to death and having exhausted their appeals. Their release came as a result of their motions for new trial. In subsequently moving for dismissal of all the charges, the prosecutors cited "a total lack of credible evidence linking Graham and/or Burrell to the crime." See Exhibit A, attached hereto.

The irrevocability of the death penalty, the recognition that it is "an extreme sanction, suitable to the most extreme of crimes," *Gregg,* 428 U.S. at 187, 96 S.Ct. 2909 and the reality that mistakes are made weigh very heavily on one side of the scales. On the other side of the scales is the alternative to capital punishment which is, under virtually all, if not all, the capital sentencing procedures in the country, life

imprisonment. If a guilty offender is spared capital punishment, he is not released onto the street to jeopardize the health and safety of others as he would be had he been acquitted outright. Almost invariably, he is imprisoned in a maximum security facility, a severe punishment in and of itself and one that is protective of society. A defendant "mistakenly" sentenced to life imprisonment instead of death is significantly less serious than a person "mistakenly" sentenced to death and executed. With the stakes that high for a mistake in one direction, and the stakes significantly less so for a mistake in the other, a different level of confidence is appropriate. Just as the law requires a greater degree of certainty in order to convict a person of a crime than to find him liable for damages in a civil law suit, so should the degree of certainty be even greater when the outcome of the decision is the death of the person.

There is certainly nothing irrational—indeed, there is nothing novel—about the idea of mitigating a death sentence because of lingering doubts as to guilt. It has often been noted that one of the most fearful aspects of the death penalty is its finality. There is simply no possibility of correcting a mistake. The horror of sending an innocent defendant to death is thus qualitatively different from the horror of falsely imprisoning that defendant. The belief that such an ultimate and final penalty is inappropriate where there are doubts as to guilt, even if they do not rise to the level necessary for acquittal, is a feeling that stems from common sense and fundamental notions of justice.

*Heiney v. Florida*, 469 U.S. 920, 921–922, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984) (Marshall, J., dissenting from denial of cert.).

The Court concludes that a "residual doubt" argument is permissible under 18 U.S.C. § 3592 and must be considered by the jury if offered by the defense.

One additional consideration is whether this analysis should be different because this is a re-sentencing and the original jury will not be making the decision. Certainly the issue of arguing "residual doubt" is simpler when it is the same jury as no new evidence need be introduced. Yet, the fact that it is a second sentencing hearing is not through the fault of the defendants. One of their convictions was overturned for error, an error assignable not to the defense but to the government and trial court. Since a "residual doubt" argument would have been available to them in the first re-sentencing, they should not lose that benefit simply because this is a re-sentencing.