*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

     *v.*

FRANK SVOBODA,

                *Defendant-Appellant.*

No. 10-3794

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-00255-001—Kathleen McDonald O'Malley, District Judge.

Decided and Filed: February 3, 2011

Before: MOORE and STRANCH, Circuit Judges; COHN, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** William L. Summers, Cleveland, Ohio, for Appellant. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Ann Arbor, Michigan, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. Frank Svoboda gave a police officer a fake driver's license after police pulled him over in March 2009. As a result, he was charged with "knowingly us[ing], affix[ing], and impress[ing] a fraudulently made, forged and counterfeited seal of a department and agency of the United States," in violation of 18 U.S.C. § 506(a)(2), and "knowingly possess[ing] an identification document and authentication feature . . . that is and appears to be an identification

_____

[*] The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

document and authentication feature of the United States" that was made without lawful authority, in violation of 18 U.S.C. § 1028(a)(6). Dist. Ct. Dkt. ("Doc.") 1 (Indictment) at 1–2. At his trial he sought a jury instruction that would have informed the jury that his good-faith belief that it was lawful to make the ID was a defense to his crimes, but the district court denied his request on the ground that this good-faith defense was not available as a matter of law for these crimes. Svoboda now appeals. Acknowledging that the Sixth Circuit Pattern Criminal Jury Instructions do not permit a good-faith-defense instruction here, he requests that this court expand the law to cover his crimes. For the reasons that follow, we decline this request, and we **AFFIRM** his conviction.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

While driving with his wife in Peninsula, Ohio, on March 19, 2009, Frank Svoboda was pulled over by Officer John Petrovich because Svoboda's truck veered off the road, through a lawn, and back onto the road. Officer Petrovich asked Svoboda for his driver's license and proof of insurance; after hesitating at first, Svoboda produced a card that forms the basis of this case. The card had the words "Driver License" on the front, along with Svoboda's name, picture, and date of birth. Doc. 112 (Trial Transcript Vol. I ("Tr.")) at 38–39; Government Exhibit No. 2. It also contained the seal of the Department of Homeland Security, the words "Title 42, Section 1983 U.S. Codes," and smaller print at the bottom stating "All Rights Reserved: Non-Assumpsit," accompanied by the White House seal and a citation of *Mugler v. Kansas*, 123 U.S. 623, 659–60 (1887). *Id.* Perplexed, Officer Petrovich sought to verify the authenticity of this ID.

While Officer Petrovich attempted to verify Svoboda's ID, Svoboda waited outside and told his wife to make some phone calls. He also donned a hat with a Homeland Security seal on it. Although he insisted that the driver's license was valid, Svoboda could provide no means for Officer Petrovich and another officer, who arrived to provide assistance, to confirm its authenticity. Svoboda told the officers that he worked for the Department of Homeland Security and that his employment was confidential. Eventually he admitted to the officers that he had not obtained a driver's license issued by the State of Ohio since 1999. The officers then arrested Svoboda, who

was charged with "knowingly us[ing], affix[ing], and impress[ing] a fraudulently made, forged and counterfeited seal of a department and agency of the United States," in violation of 18 U.S.C. § 506(a)(2), and "knowingly possess[ing] an identification document and authentication feature . . . that is and appears to be an identification document and authentication feature of the United States" that was made without lawful authority, in violation of 18 U.S.C. § 1028(a)(6). Doc. 1 (Indictment) at 1–2.

Before his trial, Svoboda was represented by several different lawyers. He also filed numerous motions and other documents on his own behalf, which made clear that he denied the authority of the government in general and the district court in particular. Ultimately, the district court held a hearing to determine Svoboda's competency, resulting in a determination of competency to stand trial. Upon reassignment to a different district judge, Svoboda's attorney renewed a request that the district court had denied months earlier for a jury instruction regarding Svoboda's asserted good-faith belief that his conduct was lawful. Svoboda argued that evidence of his good-faith belief would rebut an element of one or both of the charges that he faced. The district court agreed to hear the evidence presented at trial before ruling on Svoboda's proposed instruction.

At trial, the evidence established that Svoboda had never worked at the Department of Homeland Security. Svoboda also admitted that he had produced the driver's license himself. He claimed that an individual whom he called "Sovereign" had taught him how to make the ID. Apparently, Svoboda heard about Sovereign on the radio, and Svoboda attended classes at which Sovereign taught Svoboda and others "how the law works" and that

> [W]e're all part of Homeland Security. We're the first one to see the happening. We're the first ones there, and it's our duty to stop it. If we cannot stop it, we call for assistance, just like if you've seen a fight. If you could stop the fight, that would be your duty to stop that fight. And if you couldn't, then you would call for assistance.

Tr. at 104, 106. Sovereign also taught that Svoboda had the right to travel, which "is a God given right. And only the licenses apply to public officials or corporations." Tr.

at 109. Finally, Svoboda testified that, because of these teachings, which he asserted that he sincerely believed, he presented the ID he had created to Officer Petrovich in good faith.

The district court then held a hearing on Svoboda's requested instruction. The proposed instruction stated, in full:

(1)     The good faith of the defendant is a complete defense to the charge of Counterfeiting or Forging a Seal of an Agency of the United States contained in Count One of the indictment because good faith on the part of the defendant is, simply, inconsistent with the intent to fraudulently possess said seals.

(2)     A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under this statute merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.

(3)     A defendant does not act in good faith if, even though he honestly holds a certain opinion or belief, that defendant also knowingly makes false or fraudulent pretenses, representations, or promises to others.

(4)     While the term "good faith" has no precise definition, it encompasses, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

(5)     The burden of proving good faith does not rest with the defendant because the defendant does not have any obligation to prove anything in this case. It is the government's burden to prove to you, beyond a reasonable doubt, that the defendant acted with an intent to defraud.

(6)     If the evidence in this case leaves you with a reasonable doubt as to whether the defendant acted with an intent to defraud or in good faith, you must acquit the defendant.

Doc. 80 (Motion for Good-Faith-Defense Jury Instruction) at 4–5. This proposed instruction is identical to the one contained in § 10.04 of the Sixth Circuit Pattern Criminal Jury Instructions, except for one alteration made by Svoboda. At the end of the

first paragraph, Svoboda substituted the phrase "intent to fraudulently possess said seals" in the place of "intent to defraud," which is contained in the Pattern Instruction. It also appears from this proposed instruction that Svoboda sought to use good faith as a defense only against Count One: "knowingly us[ing], affix[ing], and impress[ing] a fraudulently made, forged and counterfeited seal," in violation of 18 U.S.C. § 506(a)(2). Doc. 1 (Indictment) at 1.

At the hearing, the district court asked Svoboda's attorney to clarify how the evidence of good faith could be used by the jury:

> **The Court:** Okay. And so tell me again exactly what evidence you believe supports a good faith instruction.
>
> **Mr. Baker:** The Defendant testified that he paid for courses that he was taught by a teacher, and that he believed these teachers.
>
> **The Court:** And again, believed what; what the teachers told him?
>
> **Mr. Baker:** Believed that it was okay to create such a license, that the United States Government had no authority over him, and that this conduct was acceptable.
>
> **The Court:** Okay. But, he—but, he did not testify [that], and you're not arguing that he believed they weren't forged or he believed they were actually made with the lawful authority of the United States. Is that right?
>
> **Mr. Baker:** I'm sorry, your Honor?
>
> **The Court:** He did not testify [that]—and as I understand it, you do not intend to argue that he, based on what the teacher told him, he believed the document wasn't forged or he believed the document was actually made with the lawful authority of the United States?
>
> **Mr. Baker:** No, these teachings make it clear the Government has no authority over you and, therefore, it would not be under the law of the United States.

Doc. 113 (Trial Transcript Vol. II ("Tr. Vol. II")) at 159–60. The district court ultimately refused to give Svoboda's proposed jury instruction, finding that it is limited to "very narrow circumstances in the Sixth Circuit and in all Circuits. It is not a generalized good faith defense, and that's a starting proposition." Tr. Vol. II at 166.

Indeed, the district court noted that "the Pattern Instructions say only use it in mail fraud and wire fraud or bank fraud cases," which require proof of the specific intent to defraud. *Id.* After observing that a good-faith defense could apply in a few tax cases to the mens rea of "[w]illfully failing to take certain actions," the court concluded that here, however, § 506 and § 1028 require only that Svoboda "knowingly" took certain actions. The district court also found it important that "[t]he Defendant testified under oath that he in fact forged those documents . . . ." *Id.*; *see also* Tr. at 132 (Svoboda testifying "Yes. I made this."). The district court therefore found that evidence of Svoboda's good-faith beliefs about the legality of his actions was simply irrelevant to any of the elements of his crimes.

When the district court delivered its instructions to the jury, in addition to omitting the requested good-faith-defense instruction, the court specifically instructed the jury that "[i]gnorance of the law is not a defense to the crimes charged." Tr. Vol. II at 225, 229. The jury convicted Svoboda on both counts. The district court sentenced him to ten months in prison and three years of supervised release, and also prohibited him from having any association or involvement with "[the] Sovereign Citizens Movement, The Possee Comitatus, or similar organizations." Doc. 101 (Judgment) at 5. Svoboda timely appealed.

## II. ANALYSIS

We review a denial of a proposed jury instruction for abuse of discretion.[1] *United States v. Adams*, 583 F.3d 457, 468–69 (6th Cir. 2009). We consider the instructions as a whole "to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Frederick*, 406 F.3d 754, 761 (6th Cir. 2005). Reversal of

---

[1]The government argues that Svoboda has waived the arguments that he now makes regarding the proposed jury instruction because he agreed to the final jury instructions presented by the district court. We disagree. Svoboda specifically requested the good-faith-defense jury instruction on several occasions, including at the final instructions conference. During this conference, the district court concluded that it would not give the instruction, but it stated "I'll note the Defendant's objection to my failure to give a good faith instruction[.]" Tr. Vol. II at 169. Thus, Svoboda has preserved the abuse-of-discretion standard for review of his claim on appeal.

a judgment may occur "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (internal quotation marks omitted). A district court may properly deny a proposed jury instruction if it is not a correct statement of law. *United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432, 441 (6th Cir. 1998).

Svoboda first argues that the district court improperly denied his proposed good-faith-defense jury instruction because such instructions should be granted whenever there is any evidence that the defendant "acted in good faith in taking the actions he did at the direction of those who exerted great influence over him." Svoboda Br. at 17. Second, he argues that the district court incorrectly held that the good-faith-defense instruction here could not, as a matter of law, apply to the charges that Svoboda faced. On this front, Svoboda recognizes that the Sixth Circuit Pattern Criminal Jury Instructions specifically state, as do other circuits' instructions, that the good-faith-defense jury instruction applies only in certain tax and fraud cases where specific intent is an element of the crime. Consequently, he contends that "the good faith jury instruction should not be limited to specific intent crimes, but should be available in crimes where the state of mind is 'knowingly' as well." Svoboda Br. at 23.

The government responds that good-faith ignorance of the law is not a defense to the crimes involved here. In addition, it addresses Svoboda's first argument by pointing out that the district court did not refuse to give the instruction because the court believed no evidentiary basis existed, but rather because the court found that the good-faith-defense instruction did not apply as a matter of law. The government is correct on this point. The district court did not hold that Svoboda failed to present enough evidence to warrant his requested jury instruction, but rather the district court held that the good-faith-defense instruction was not available as a matter of law.

We also agree with the government that the district court correctly held that the good-faith-defense instruction was not available in this case. The doctrine that ignorance of the law is no excuse is a "deeply embedded principle[] in our American legal tradition." *United States v. Ali*, 557 F.3d 715, 726 (6th Cir. 2009) (internal

quotation marks omitted); *see also United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999), *cert. denied*, 120 S. Ct. 1262 (2000).  In one sense, then, we can easily reject Svoboda's contention because he basically argues that he followed the erroneous legal interpretation provided by Sovereign.  Furthermore, even when we view Svoboda's arguments in the more narrow context of the denial of his proposed jury instruction, we reach the same result, for two reasons.  First, the good-faith-defense instruction does not, as a matter of law, apply to Svoboda's crimes because the defense would not rebut any element of those crimes.  Second, even if this defense did apply to Svoboda's crimes, Svoboda's particular type of good-faith argument is not relevant for the reasons set out in *Cheek v. United States*, 498 U.S. 192 (1991), because it is not based on a good-faith belief about what the law provides, but rather a belief that the law does not validly constrain him.  Therefore, the requested jury instruction was not legally applicable to Svoboda's case.

Count One charges Svoboda with violating 18 U.S.C. § 506(a)(2), which provides:

> (a)  Whoever—(2) knowingly uses, affixes, or impresses any . . . fraudulently made, forged [or] counterfeited . . . seal or facsimile thereof to or upon any certificate, instrument, commission, document, or paper of any description; shall be fined under this title, or imprisoned not more than 5 years, or both.

The term "knowingly" applies to the action in the statute ("us[ing], affix[ing], or impress[ing]" to a document or instrument) and to the objects of that action (a fraudulently made, forged, or counterfeited seal).  *See Flores-Figueroa v. United States*, 129 S. Ct. 1886, 1891 (2009) ("[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (applying the term "knowingly" to all elements of 18 U.S.C. § 2252—"transport[ing] or ship[ping]" and "any visual depiction . . . involv[ing] the use of a minor engaging in sexually explicit conduct"—to avoid criminalizing otherwise innocent conduct).  Thus, the government simply needed to prove that Svoboda was aware that he used or affixed

or impressed a seal that he knew was forged, counterfeited, or fraudulently made.  It did not need to prove that Svoboda knew that current state and federal law validly constrains him.

The district court's instructions conformed with this approach.  The Sixth Circuit Pattern Criminal Jury Instructions recommend that courts define "knowingly" as part of the elements of the offense.  *See* Sixth Circuit Pattern Criminal Jury Instructions § 2.06 cmt. (2009) ("The Committee recommends that the district court give no general instruction defining the term 'knowingly' and that instead, the district court define the mental state required for the particular crime charged as part of the court's instructions defining the elements of the offense.")  In the jury instructions on the elements of Count One, the district court did just that.  Specifically, the court instructed the jury as follows:

>   (1)   An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word "knowingly" is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason.
>
>   (2)   While the government must prove that the defendant acted "knowingly," it is not required to prove that the defendant knew that his actions violated any particular provision of law, or even knew that his actions violated the law at all.  Ignorance of the law is not a defense to the crimes charged.
>
>   (3)   As to Count I, you must consider whether the defendant knowingly used, affixed or impressed a seal of any department or agency of the United States or any facsimile thereof with knowledge that such seal or facsimile was fraudulently made, forged or counterfeited.

Doc. 95 at 19 (Jury Instructions).  Thus, the district court defined the term "knowingly" as referring to knowledge of conduct, not knowledge of the law.  Svoboda's counsel had no objection to this instruction at the final instructions conference.  Tr. Vol. II. at 188–89.  We see no error in these instructions.  Given that § 506(a)(2) does not require knowledge of the law, these instructions "adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *Frederick*, 406 F.3d at 761.

Moreover, Svoboda's good-faith-belief defense will not rebut any element of the crime. Svoboda's counsel clarified in the district court that Svoboda did not claim to have lacked knowledge that the seals were forged; indeed, Svoboda himself made the fake license with the forged seals. Svoboda simply rejected the authority of the Government and the validity of current state and federal law. Yet, as mentioned above, knowledge of the validity of current state and federal law does not constitute an element of the crime. Svodboda's requested good-faith-defense instruction was, as a result, properly denied.

This analysis applies similarly to Count Two. For that count, the statute provides:

> (a) Whoever . . . (6) knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States or a sponsoring entity of an event designated as a special event of national significance which is stolen or produced without lawful authority knowing that such document or feature was stolen or produced without such authority . . . shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 1028(a)(6). The district court's instruction on the element of knowledge was almost identical to the one it gave for Count One. For Count Two, the district court stated that "an act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. The purpose of adding the word 'knowingly' is to insure that no one will be convicted for an act done because of mistake, or accident, or other innocent reason." Doc. 95 (Jury Instructions) at 24. The court also stated that "[the government] is not required to prove that the defendant knew that his actions violated any particular provision of law, or even knew that his actions violated the law at all. Ignorance of the law is not a defense to the crimes charged." *Id.* Finally, the court stated that the government need simply prove that "the defendant knowingly possessed an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States with knowledge that it was produced without lawful authority." *Id.* We see no error in these instructions.

Furthermore, the fact that § 1028(a)(6) requires that the defendant be shown to have "know[n] that such document or feature was stolen or produced without [lawful] authority" does not alter the analysis. Svoboda does not argue that he did not know that the ID he presented to Officer Petrovich was forged. Indeed, he admitted that he *did* know that he created the document purporting to be a government-issued driver's license; he claimed instead only to have believed that current state and federal law is not valid. This entirely different argument does not rebut any element of the crime.

Finally, with respect to both § 506(a)(2) and § 1028(a)(6), the Supreme Court's decision in *Cheek v. United States*, 498 U.S. 192 (1991), establishes that Svoboda's particular type of argument is not, as a matter of law, a good-faith belief that results in a mistake of law. In *Cheek*, the Supreme Court considered a tax statute containing the mens rea of willfulness, which the Court had previously interpreted to require knowledge of the law. *See Cheek*, 498 U.S. at 201 ("[W]illfulness . . . requires the [g]overnment to prove that the law imposed a duty on the defendant, *that the defendant knew of this duty*, and that he voluntarily and intentionally violated that duty.") (emphasis added); *see also United States v. Pensyl*, 387 F.3d 456, 458–59 (6th Cir. 2004) (noting this same definition of willfulness). The Court in *Cheek* recognized that one cannot be found to have "willfully attempt[ed] in any manner to evade or defeat any tax," when one has "a good-faith belief that he was not violating any of the provisions of the tax laws," whether or not that belief was reasonable. *Cheek*, 498 U.S. at 193, 202.

The Court held that the good-faith-defense instruction was nonetheless unavailable to Cheek because of the particular type of argument that Cheek sought to make. Cheek had argued in the district court that he had a good-faith belief that the tax laws did not apply to him because he concluded that they were unconstitutional, but the Court squarely rejected the argument that this type of good-faith belief negates the required knowledge of the law. In the Court's view, this argument

> do[es] not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, [it] reveal[s] full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable. Thus in this case, Cheek paid

his taxes for years, but after attending various seminars and based on his own study, he concluded that the income tax laws could not constitutionally require him to pay a tax.

*Cheek*, 498 U.S. at 205–06.  Consequently, the Court did "not believe that Congress contemplated that such a taxpayer, without risking criminal prosecution, could ignore the duties imposed upon him by the Internal Revenue Code and refuse to utilize the mechanisms provided by Congress to present his claims of invalidity to the courts and to abide by their decisions."  *Id.* at 206.  It therefore held "that in a case like this, a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper."  *Id.*

Svoboda's argument is similar to that made by Cheek.  For Svoboda, this was not a situation involving "innocent mistakes caused by the complexity of the [law]."  *Cheek*, 498 U.S. at 205.  Instead, analogous to the tax protester in *Cheek*, Svoboda's argument "reveal[s] full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable."  *Id.* at 205–06.  Moreover, Cheek "paid his taxes for years, but after attending various seminars and based on his own study, he concluded that the income tax laws could not constitutionally require him to pay a tax."  *Id.* at 206.  Similarly, Svoboda had a valid driver's license in the past, but concluded that he could drive without a state-issued license only after attending Sovereign's seminars.  Lastly, although Svoboda argues that his mistake was, in fact, "innocent" because he believed that Sovereign was correct, that purported good-faith belief does not provide him relief.  Svoboda's argument is most accurately characterized as a claim that he relied on a legal interpretation by a layman, which is clearly not a defense.  *See Cheek*, 498 U.S. at 206; *Baker*, 197 F.3d at 218.  Thus, as in *Cheek*, the good-faith-belief defense does not apply to Svoboda's crimes.

## III.  CONCLUSION

We therefore reject Svoboda's argument that either § 506(a)(2) or § 1028(a)(6) permits a good-faith-belief defense, we approve the district court's refusal to give Svoboda's proposed jury instruction, and we **AFFIRM** Svoboda's conviction.