ALICE M. BATCHELDER, Chief Judge,
concurring in part and dissenting in part.
I would affirm the district court in its entirety — both conviction and sentence. Therefore, I concur generally in the portions of the majority’s decision that affirm the judgment of the district court without necessarily joining the majority’s reasoning or discussion. I agree that we need not reach the issue contained in Section XIV but I do not join in the associated dicta. I respectfully dissent from those portions of the majority’s decision that re *354 verse the district court, specifically Sections II and III.
In Section II, the majority conducts a de novo review[1] of Gabrioris claim that the district court misinterpreted or misapplied certain provisions of the Federal Death Penalty Act of 1994 (FDPA), 18 U.S.C. §§ 3591-3598. By reading the word “any” in § 3592(a) (“any mitigating factor”) and § 3593(c) (“any information relevant to a mitigating factor”) as unqualified and unlimited, the majority holds that these provisions mandate that a capital defendant may offer to the jury any “mitigating” evidence or argument, i.e., any evidence or argument that could conceivably make a juror question the appropriateness of the death penalty. Reading “any” as unlimited necessarily requires the inclusion within these two provisions of Michigan’s policy against the death penalty. The majority therefore concludes that the district court erred by excluding reference to Michigan law.
In Section III, the majority considers Gabrioris claim that the district court violated his constitutional right to due process by misinstructing the jury on the burden of proof in the weighing of aggravating and mitigating factors, and again conducts a de novo review.[2] The district court instructed the jury that it need only find that the aggravating factors “sufficiently outweigh” the mitigating factors, which is language quoted directly from the statute. See § 3593(e). The majority finds the statutory language unacceptably vague, and therefore constitutionally infirm, and holds that a sentencing court must instruct the penalty-phase jury that it may impose the death penalty only if it finds beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors.
I must respectfully disagree with both of these holdings. I would hold that a reasonable reading of §§ 3592(a) and 3593(c) allows a sentencing court to impose some limits on the evidence or argument the defendant may offer in mitigation, and that the district court properly did so in this case. Similarly, I would hold that the Constitution does not dictate the manner in which death-penalty aggravating and mitigating factors are to be weighed, and therefore the district court could not and did not violate the Constitution in the way it instructed the jury. I would affirm the district court.
I.
Prior to the sentencing phase, the government moved the district court in limine to prohibit Gabrioris counsel from arguing, as a mitigating factor, that the Michigan state constitution prohibits the death penalty. See Mich. Const. Art. IV, § 46 (“No law shall be enacted providing for the death penalty.”). Gabrioris counsel conceded that Michigan’s prohibition, taken alone, would not be a direct mitigating factor, and explained that he actually *355 intended to argue that the imposition of the death penalty in this case would be arbitrary, given the totality of the circumstances:
[I]n this case there is the potential for argument that it would be arbitrary, potentially arbitrary for this Michigan case with a Michigan victim, a Michigan defendant, in this somewhat accidental finding of the body on federal property, it’s an argument that we may like to make [to the jury] to say this [death penalty] is an arbitrary decision. The location of the body is somewhat happenstance and could be a factor that [the sentencing jury] could consider. Were this body found 200 feet [in] the other direction, this [case] would be in Michigan [court] and there would be no death penalty possible. It’s an arbitrary factor that we feel we should be permitted to argue.
The government replied, inter alia, that this was an inappropriate political argument and “an invitation for this jury to cast aside what federal law provides for.” The district court granted the motion and barred the argument, holding that it was not a mitigating factor under § 3592(a):
The mitigating factors as set forth in 3592(a) of 18 United States Code talks about specific ones: the participation in the crime, the impairment of capacity, duress, et cetera, et cetera; equally culpable defendants, which is what someone said here a little while ago; and victim’s consent. And then it says: ‘Any other factor in the defendant’s background, record[,] or character!,] or any other circumstances of the offense that mitigate against imposition of [a] death sentence.’
Now, the jury has found beyond a reasonable doubt, and had to find because that was one of the four essential elements of the particular offense that was before the jury last week concerning guilt, has found beyond a reasonable doubt that the crime occurred within federal territory or on federal property. This cannot be relitigated. It’s already been litigated. It’s not a specific factor that can be litigated, and to make mention of it would be relitigating it saying, Well, look, if it happened two, three hundred feet away, it wouldn’t be.
This issue, of course, presents itself in a multitude of circumstances before this [c]ourt. In virtually every one[,] this [c]ourt and the [c]ourt of [a]ppeals has given clear markings that it’s not a subject to be discussed. For instance, there are certain drug violations, particularly as pertains to crack cocaine, where there are some rather heavy sentences for crack cocaine distributors [under federal law] compared with, say, Michigan law. And this [c]ourt would never permit nor could this [c]ourt [ ] by law permit a defense counsel to get up and say [to the jury], You know, under state law this has a penalty of X and Y, but here we are in federal court and it has a much higher penalty, so therefore, you ought to do this, jury.
This isn’t for — that isn’t material to the case. That isn’t material to the defendant’s background, record[,] or character. That isn’t material to the circumstances of the case, nor does it mitigate one way or the other, and it is not a proper subject matter. It would in fact permit the jury to speculate and it would in fact insert an extraneous matter into the process.
Thus, the district court “preclud[ed] defense argument concerning the lack of a death penalty under the law of the State of Michigan as mitigating factor.”
At the close of evidence and argument, the district court instructed the jury to consider 12 specific mitigating factors and *356 “anything else about the commission of the crime or about Marvin Gabrion’s background or character that would mitigate against the imposition of the death penalty ... whether or not specifically argued by defense counsel, but which are supported by the evidence.” After almost seven hours of deliberation, the jury imposed the death penalty.
On appeal, Gabrion claims a violation of both a constitutional[3] and a statutory[4] right to present mitigating evidence and argument to the sentencing jury — on theories of residual doubt,[5] arbitrariness,[6] and disproportionality to the sentences meted out for other equally culpable defendants.[7] There is no need to dwell on the constitutional claim, as it is untenable.[8] The ma *357 jority does not even address it and therefore, presumably, rejects it by implication. But the majority does accept the statutory claim.
The majority finds that the district court erred by “failfing] to consider the specific language of the statute allowing ‘any mitigating factor,’” in the FDPA, §§ 3592(a) and 3593(c), and relies on United States v. Davis, 132 F.Supp.2d 455 (E.D.La.2001), for the proposition that the phrase “any mitigating factor” contains “no qualification or limitation,” and therefore the defendant is entitled to present or argue “any mitigating factor ... period.” Id. at 464 (ellipses in original; internal quotation marks omitted). The majority then defines mitigating factors as anything that “could conceivably make a juror question” the appropriateness of imposing the death penalty in a given case. By this reading of “any” and “mitigating”, the majority con-eludes that “[t]he phrase ‘any mitigating factor’ plainly includes information about Michigan’s policy against the death penalty.”
But such a broad view is not universally held. At least one member of the Supreme Court would reject this view. See Graham v. Collins, 506 U.S. 461, 490, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (Thomas, J., concurring) (“By requiring that sentences be allowed to ‘consider’ all ‘relevant’ mitigating circumstances, we cannot mean ... that circumstances are necessarily relevant for constitutional purposes if they have any conceivable mitigating value.”). We appear to have rejected such a broad view in this Circuit as well. In Owens v. Guida, 549 F.3d 399, 419-20 (6th Cir.2008), we rejected the defendant’s contention that the proposed mitigating evidence[9] was “automatically relevant” and *358 admissible simply because she “wishe[d] to present” it. The Owens dissent argued that because the evidence could have persuaded the jury to spare the defendant’s life, it clearly “fall[s] within the meaning of ‘any relevant mitigating evidence,’ ” id. at 431 (Merritt, J., dissenting), but the majority expressly rejected that argument, id. at 422. The Seventh Circuit has also rejected such a broad view. “A mitigating factor is a factor arguing against sentencing this defendant to death; it is not an argument against the death penalty in general.” United States v. Johnson, 223 F.3d 665, 675 (7th Cir.2000).[10] “This is apparent from the fact that the list of mitigating factors in the [FDPA] does not include the harshness or ugliness or (some would say) the immorality of the death penalty, but only factors specific to the defendant. See 18 U.S.C. § 3592(a), and in particular subsection (a)(8)....” Id.
The counter-argument, which stems from Davis as well, is that the FDPA is “substantially broader than what the Supreme Court has declared to be the minimal requirements under the Constitution.” Davis, 132 F.Supp.2d at 464. That is, by using the phrase “including the following” in § 3592(a), Congress made the list illustrative not exclusive, and included the Supreme Court’s constitutional minimum (codified as subsection § 3592(a)(8) in the non-exclusive list) as merely one sub-category of “any mitigating factor,” of which there are others yet unarticulated. Id. This view renders Graham and Owens in-apposite, inasmuch as both were predicated on Lockett and Eddings (i.e., the constitutional minimum), and directly refutes the reasoning of Johnson.
There are certainly courts that subscribe to this “broad view” of admissibility (i.e., the Davis view) — at least five district courts at last count.[11] But there are also courts that do not. The most thorough critique of Davis’s broad view is presented in United States v. Taylor, 583 F.Supp.2d 923, 933 (E.D.Tenn.2008), an FDPA case in which the defendant sought to admit evidence about other federal capital cases in which other murderers were not sentenced to death, in an effort to persuade the sentencing jury that sentencing him to death would be disproportionate by comparison.[12] The defendant “argue[d] [that] the FDPA is broader than the Constitution in its consideration of mitigating factors,” id. at 934, and the district court acknowledged that other district courts had accepted that broad view of admissibility, id. (quoting at length United States v. Sampson, 335 F.Supp.2d 166, 194-95 (D.Mass. 2004) (quoting Davis, 132 F.Supp.2d at 463-64)). But the district court in Taylor *359 also recognized that “the Seventh Circuit [has] construed the statute more narrowly,” id. (citing Johnson, 223 F.3d at 675), and proceeded to “engage in statutory construction,” id.:
Applying the traditional tools of statutory construction, the [c]ourt concludes the Seventh Circuit’s interpretation is more persuasive. The [c]ourt begins by considering the language of the statute as a whole. One provision of a statute is not considered in isolation or in a vacuum. Rather, courts must consider a statutory provision’s phraseology in light of the overall structure and purpose of the legislation. Thus, the [c]ourt must make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless.
First, the statutory construction canon ejusdem generis applies here: ‘Where a statute lists specific things followed by a more general one, the canon of ejusdem generis provides guidance. Under ejusdem generis, we attribute the same characteristic of discreteness shared by all the preceding items to the term in question.’ Applying this canon shows that the first seven factors are similar to the eighth factor. Although the list of seven specific factors is illustrative, not exhaustive, the description of ‘Other factors’ does not allow for factors of an entirely different nature from the illustrated factors. All the illustrated factors concern the defendant or the circumstances of the offense, including the culpability, participation, and punishment of other defendants. Applying ejusdem generis, it is evident that the characteristics of the enumerated mitigating factors are similar to the description of ‘Other factors’ as those concerning a defendant’s background, record, or character!,] or any other circumstance of the offense that mitigate against imposition of the death sentence.
Second, Defendant’s reading of the statute would render the inclusion of ‘Other factors’ superfluous. ‘Other factors’ is a catch-all provision. If the statute permitted other factors beyond what is contained in ‘Other factors,’ the statute would contain a broader description than what is contained in ‘Other factors.’ Under Defendant’s reading, the statute contains an implied ‘other factors’ in addition to the ‘Other factors’ actually listed, thus rendering ‘Other factors’ superfluous.
Third, the [c]ourt finds misplaced the emphasis on the word ‘any’ in ‘any mitigating factors.’ Contrary to Defendant’s assertion, the FDPA’s use of the word ‘any’ does not indicate [that] Congress intended to greatly expand the definition of mitigating factors over that required by the Constitution. The statutory language of ‘any mitigating factor,’ 18 U.S.C. § 3592(a), is the same as the Constitutional requirement of ‘any relevant mitigating factor’ [in Lockett and Eddings ]. The FDPA’s exclusion of the word ‘relevant’ has no bearing because elsewhere the statute makes clear non-relevant information is inadmissible. 18 U.S.C. § 3593(c).
Based on these considerations, the [c]ourt concludes [that] the mitigating factors required by the FDPA are not as broad as Defendant contends, but are rather in line with the seven enumerated factors and the description of ‘Other factors’ contained in the statute.
Id. at 934-35 (citations and quotation marks omitted). The Taylor district court therefore concluded that “such testimony [wa]s inadmissible and is not proper for *360 presenting to a jury.” [13] Id. at 933.
Circuit courts have rejected Davis’s broad view as well. In United States v. Sampson, 486 F.3d 13, 44-45 (1st Cir. 2007), the defendant sought to admit evidence “that numerous other federal defendants convicted of multiple murders had not been sentenced to death”[14] and argued that the “trial court may not restrict the presentation of relevant evidence offered in mitigation of a possible death sentence” (i.e., the broad view). The First Circuit disagreed, saying: “This argument cannot be literally true; if it were, a capital defendant would have an unrestricted license to introduce the most confusing or misleading evidence as long as it was marginally relevant. We reject so absolutist a view.” Id. at 45; accord United States v. Purkey, 428 F.3d 738, 756 (8th Cir.2005) (“The [FDPA] erects very low barriers to the admission of evidence at capital sentencing hearings ... [b]ut this does not mean that the defense has carte blanche to introduce any and all evidence that it wishes.”); see also United States v. Mitchell, 502 F.3d 931, 991 (9th Cir.2007) (limiting relevant mitigating evidence to “evidence which tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value” (quotation marks omitted)).
In United States v. Caro, 597 F.3d 608, 634-35 (4th Cir.2010), the defendant sought to admit “a letter he had written to the government offering to plead guilty” but the district court excluded the letter as irrelevant. Caro argued that “the letter was admissible under § 3593(c) because it supported the mitigating factor of acceptance of responsibility,” but the Fourth Circuit rejected this argument and held that the district court‘had not abused its discretion by excluding it. Id. at 635.
In the district court, Caro had sought a jury instruction on “residual doubt” as a mitigating factor and cited Davis, 132 F.Supp.2d at 467-68, for authority. United States v. Caro, 483 F.Supp.2d 513, 518 n. 7 (W.D.Va.2007). The Caro district court expressly rejected this argument:
Under the system envisioned by the Davis court, therefore, a capital defendant is found guilty twice: first in the guilt phase and then if the defendant desires, the jury can revisit his guilt in the sentencing phase. The Supreme Court has never required this two-stage guilt determination and Congress did not so provide in the. FDPA. Hence, the Davis argument lacks sufficient support.
Id. The court went on to explain:
Because the [Supreme] Court has never found that a defendant has a constitutional right to a residual doubt instruction, any entitlement to this instruction must come from the applicable capital statute. The FDPA provides that ‘in determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor.’ 18 U.S.C.A. § 3592(a). The statute then lists seven mitigating factors. While it is true that this list is not meant to be exhaustive, the absence of residual doubt as a statutory mitigating factor is instructive. The government argued that Congress at the time the FDPA was enacted, was aware of the holding in Franklin that residual doubt is not a constitutionally required mitigating circumstance and, had it elected to do so, could have included language in *361 the statute expressly authorizing the consideration of residual doubt.
Id. at 519-20 (certain citations, editorial marks, and quotation marks omitted).
Therefore, the district court in Caro concluded, “the words of the FDPA suggestf ] that residual doubt is not a proper mitigating factor.” Id. at 520. Caro also sought a jury instruction on “life without the possibility of parole” as a mitigating factor and the district court rejected that as well, quoting Johnson, 223 F.3d at 675 (“A mitigating factor is a factor arguing against sentencing this defendant to death; it is not an argument against the death penalty in general.”), concluding that “this factor is wholly irrelevant to these considerations.” Id. Caro did not appeal these issues.
The case most closely analogous case to Gabrion’s is United States v. Higgs, 353 F.3d 281, 289 (4th Cir.2003), which concerned the kidnapping and murder of three women in the Patuxent National Wildlife Refuge, located in Prince George’s County, Maryland. Higgs and his accomplice enticed the women to this secluded location with the premeditated purpose of murdering them. Id. at 290. Higgs drove the women in his car, supplied the murder weapon, and orchestrated the murder, but his accomplice actually shot and killed them while Higgs waited in the car. Id. Although located in Maryland, the Patuxent National Wildlife Refuge is federal property under federal jurisdiction, id., so the federal prosecutor charged Higgs under federal statute, tried the case in federal court, and sought the death penalty, id. at 294. The jury returned guilty verdicts on all charges. Id.
At sentencing, Higgs’s counsel sought to argue “to the jury, as a mitigating circumstance, that Higgs would not have been eligible for the death penalty if the murders had occurred within the jurisdiction of the State of Maryland” because, “under Maryland law, the death penalty may only be imposed on the ‘triggerman’ in cases such as this,” id. at 328 — suggesting that a death sentence would be disproportionate to the sentences of other similarly situated defendants in Maryland. Higgs’s counsel also sought to argue that “because the murders took place in an area where Maryland had an easement over federal property, [Higgs] could not have known that he was on federal land when he committed the murders,” id. — suggesting residual doubt or that imposition of the death penalty would be arbitrary under the circumstances.[15] The district court excluded this evidence and associated argument. Id. On appeal, the Fourth Circuit affirmed, explaining:
Section 3592(a) provides that ‘in determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor.’ In addition to seven enumerated factors, the statute requires consideration of ‘other factors in the defendant’s background, record, or character or any other circumstances of the offense that mitigate against imposition of the death sentence.’ Higgs asserts that his unknowing presence within federal jurisdiction, as opposed to the jurisdiction of the State of Maryland where he would have been ineligible for a death sentence, is a circumstance of the offense *362 that mitigates against imposition of the death sentence. We disagree.
An assertion that the death penalty is improper in one jurisdiction because it is not allowed in another is, at bottom, a reflection of the debate surrounding the propriety of the death penalty, which is a matter of policy for the legislative branch. As such, it was not error to refuse to submit it as a mitigating factor in this case.
Id. (citations and editorial marks omitted).
Higgs committed a murder on federal property in Maryland. Gabrion committed a murder on federal property in Michigan. Higgs would not have been subject to the death penalty under Maryland law. Gabrion would not have been subject to the death penalty under Michigan law. Both sought to argue this disparity to their respective sentencing juries and both district courts refused to permit the argument. It is not easy to distinguish the two cases — or the two defendants’ arguments. Both suggest residual doubt, arbitrariness, and dis-proportionality based on the disparity between state and federal law.
The Fourth Circuit held that Maryland law was not a circumstance of the offense or even a mitigating factor. Higgs, 353 F.3d at 328; cf. Taylor, 583 F.Supp.2d at 943 (“France’s policy on capital punishment does not make [a capital] [defendant [in the United States] more or less deserving of a death sentencing.”). This same analysis is appropriate in the present case.
Gabrion’s counsel sought to argue to the jury, as a mitigating circumstance, that Gabrion would not have been eligible for the death penalty if the murder had occurred 228 feet to the north, i.e., within the jurisdiction of the State of Michigan, because Michigan does not have the death penalty. The majority holds that the FDPA, §§ 3592(a) and 3593(c), required the district court to admit this evidence and argument without limitation, and relies on the “broad view” (i.e., the Davis view) of admissibility. But, as the foregoing discussion demonstrates, it appears that the greater weight of authority is against Davis’s broad view. And I note additional obstacles.
The inflexibility of such an absolute proposition appears to render it limitless.[16] After today, Michigan’s law against the death penalty is a mitigating factor. But suppose Michigan had, not a law, but merely pending legislation to abolish the death penalty — must a court admit that as a mitigating factor? What about a pending Supreme Court case or a campaign promise? The Pope condemns the death penalty — is that a mitigating factor to be argued to the sentencing jury? Read generously, this broad view of admissibility entitles a capital defendant’s counsel to present evidence or argument no matter how tenuous, tangential, or even speculative. The only limit is counsel’s own creativity — or lack of creativity. And if counsel may present such argument, no matter how ineffective or unappealing to jurors, will there come a day when we hold counsel ineffective for failing to do so?
Furthermore, this particular argument — about Michigan law — appears to be an endorsement of jury nullification of federal law.[17] Cf. Hall v. Washington, 106 *363 F.3d 742, 750 (7th Cir.1997); New Mexico v. Clark, 128 N.M. 119, 990 P.2d 793, 806 (1999). We have held that courts are not to endorse jury nullification. See, e.g., United States v. Krzyske, 836 F.2d 1013, 1021 (6th Cir.1988) (“A jury’s ‘right’ to reach any verdict it wishes does not, however, infringe on the duty of the court to instruct the jury only as to the correct law applicable to the particular case.”); see also United States v. Powell, 955 F.2d 1206, 1213 (9th Cir.1992). In fact, “it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence.” Merced v. McGrath, 426 F.3d 1076, 1079 (9th Cir.2005) (citing Sparf v. United States, 156 U.S. 51, 102, 15 S.Ct. 273, 39 L.Ed. 343 (1895)); accord United States v. Avery, 717 F.2d 1020, 1027 (6th Cir.1983). Gabrion’s counsel would urge the jurors to disregard federal law in favor of Michigan law and decline to impose the death penalty because it would be unavailable under Michigan law. The majority holds that the court must allow this. And yet, if a juror at voir dire expressed this intention, the prosecution could have that juror removed for cause. See Wainwright v. Witt, 469 U.S. 412, 426, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (jurors may be removed for cause at the voir dire stage of a capital trial if they express an inability or unwillingness “to faithfully and impartially apply the law”).
Finally, this approach will create an inconsistency in the application of the FDPA when Congress’s intent was to ensure uniformity. See Rory K. Little, The Federal Death Penalty: History and Some Thoughts About the Department of Justice’s Role, 26 Fordham Urb. L.J. 347, 434 (1999) (“While one might possibly argue in favor of a federal death penalty regime that lacks national uniformity — one that would permit similar federal crimes and defendants to receive life or death dependant on the district and regionalized, cultural differences — that does not appear to be the statute Congress has enacted nor is it the stated policy of the Attorney General.”); see also United States v. Acosta-Martinez, 252 F.3d 13, 20 (1st Cir.2001) (“There is little reason to think that the federal interest in defining the punishment for federal crimes would have been considered by Congress to be a matter for local veto power.”). If Congress had intended to treat the non-death-penalty jurisdictions [18] differently under the FDPA, it certainly could have done so. But it did not.
*364 For the foregoing reasons, I cannot join the majority’s adoption of the Davis broad view of admissibility. I would read § 3592(a) and § 3593(c) as having the same limits as the Lockett and Eddings line of cases. See United States v. Rodriguez, 581 F.3d 775, 815 (8th Cir.2009) (“The Justices’ reasons for declining to recognize a constitutional rule apply with equal force [to] the FDPA.”). I would hold that these provisions allow a sentencing court to limit the evidence or argument to be offered in mitigation, and that the district court properly did so in this case.
II.
At sentencing, Gabrion asked for a jury instruction concerning the weighing of aggravating and mitigating factors, which would have required the jury “to decide whether you are unanimously persuaded beyond a reasonable doubt that the aggravating factors proved so outweigh any mitigating factors that justice cannot be served absent a sentence of death.” The court declined and instead instructed the jury that it need only find that the aggravating factors “sufficiently outweigh” the mitigating factors, which is language quoted directly from the statute. See § 3593(e).
On appeal, Gabrion claims that this instruction denied him due process, in violation of the Fifth and Eighth Amendments to the Constitution. The majority agrees and holds that a sentencing court must instruct the penalty-phase jury that it may not impose the death penalty unless it finds beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors. The majority recognizes that this is a unique view among the Circuits[19] and, undeterred, offers a thorough rebuttal of those other circuits’ reasoning. And the majority is, of course, entitled to engage in that exercise. But we are not at liberty to rebut the Supreme Court — we are bound by its decisions.
In Kansas v. Marsh, 548 U.S. 163, 165-66, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006), the Court was asked to consider the constitutionality of a statute that required the imposition of the death penalty “when the sentencing jury determines that aggravating evidence and mitigating evidence are in equipoise” — that is, when the aggravating factors do not “outweigh” the mitigating factors at all, but are in equal balance. In reaching its conclusion — that the scheme is constitutional — the Court explained that it has “never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.” Id. at 175, 126 S.Ct. 2516 (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality opinion) (citing Zant v. Stephens, 462 U.S. 862, 875-76 n. 13, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983))).[20]
Consequently, I must respectfully dissent from the majority’s holding today. I would hold that because the Constitution does not dictate the manner in which death-penalty aggravating and mitigating factors are to be weighed, the district *365 court did not violate the Constitution by instructing the jury in accordance with the language of the statute.
III.
In summary, I would conclude that the district court was not obliged to admit evidence or argument concerning Michigan’s abolition of the death penalty; nor was it required to instruct the jurors that, in order to impose the death penalty, they must find “beyond a reasonable doubt” that the aggravating factors outweighed the mitigating factors. Therefore, I respectfully dissent from these two portions of the majority’s decision. I otherwise concur in the majority’s judgment.

. Absent the statutory claim, we would review a challenge to the district court’s exclusion of evidence for an abuse of discretion. General Elec. Co. v. Joiner, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); United States v. Lujan, 603 F.3d 850, 853 (10th Cir. 2010) ("We review a district court’s order excluding evidence from the penalty phase of a capital case under 18 U.S.C. § 3593(c) for an abuse of discretion.”); United States v. Pepin, 514 F.3d 193, 202 (2d Cir.2008).

. Absent a claim of constitutional violation, we would review a challenge to the district court’s jury instructions for an abuse of discretion. United States v. Svoboda, 633 F.3d 479, 483 (6th Cir.2011); see also Boyle v. United States, 556 U.S. 938, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009) ("A trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed.”).

. See Appellant Br. at 118 (Dec. 12, 2005) (Assigned Error 28: "The failure to allow the jury to consider as a mitigating circumstance the fact that Michigan is not a death penalty jurisdiction when there remained residual doubt about federal jurisdiction violated the Eighth Amendment.”); Appellant Reply Br. at 42 (Dec. 12, 2005) (Assigned Error 28: "The district court violated the Eighth Amendment by not allowing the jury to consider the fact that Michigan is not a death penalty jurisdiction when an arbitrary 227 feet was all that made this a capital prosecution.”); Supp. Appellant Br. at 45 (Dec. 14, 2009) (Supplemental Argument 10: "Failure to allow the jury to consider as a mitigating circumstance that fact that Michigan is not a death penalty jurisdiction was reversible [constitutional] error.”).

. See Appellant Br. at 120 (Dec. 12, 2005) ("This [absence of the death penalty under Michigan law] clearly was a fact that the jury under 18 U.S.C. § 3592(a)(8) and Lockett should have been allowed to consider.”); Appellant Reply Br. at 42-43 (Dec. 12, 2005) ("This is an important factor related to this crime and a 'circumstance of the offense,' and, as such, pursuant to the 'catch-all' provision of 18 U.S.C. § 3592(a)(8), the jury should have been instructed to consider the fact that Michigan is not a death penalty jurisdiction.”); Supp. Appellant Reply Br. at 28-29 (Mar. 22, 2010) (Supplemental Reply Argument 7: "Michigan as a non-death state,” reiterating that "[t]his is an important factor related to this crime ánd a 'circumstance of the offense,' and, as such, pursuant to the 'catch-all' provision of 18 U.S.C. § 3592(a)(8), the jury should have been instructed to consider the fact that Michigan is not a death penalty jurisdiction.”).

. See Appellant Br. at 118-19 (Dec. 12, 2005) (alleging a "lingering doubt as to whether the offense was committed within the exclusive maritime and territorial jurisdiction of the United States”); Appellant Reply Br. at 42 (Dec. 12, 2005) (asserting that "there remained residual doubt about federal jurisdiction”); Supp. Appellant Br. at 45 (Dec. 14, 2009) (asserting that "there remained residual doubt about federal jurisdiction”).

. See Appellant Br. at 119 (Dec. 12, 2005) (alleging that "an arbitrary 227 feet made the difference between life and death” based on a "geographical happenstance that had this offense occurred outside the exclusive maritime and territorial jurisdiction of the United States [and therefore in Michigan jurisdiction], no death penalty could be imposed under the constitution of the State of Michigan”); Appellant Reply Br. at 43 (Dec. 12, 2005) (arguing that "had the body been discovered 228 feet north of where it was[,] execution would not have been a penalty [that] jurors could have considered [so] [t]his is the ultimate 'arbitrary' factor barring the death penalty under federal law”).

. See Appellant Br. at 120 (Dec. 12, 2005) (referring in a parenthetical to a case concerning "equally or more culpable defendants [who] would not face the death penalty”).

. In Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a plurality of the Court announced that "the Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, [1] any aspect of a defendant's character or record and [2] any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.” The Lockett plurality reiterated: "Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense.” Id. at 604 n. 12, 98 S.Ct. 2954. *357 The Court adopted this statement as a holding in Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); accord Kordenbrock v. Scroggy, 919 F.2d 1091, 1102 (6th Cir.1990) (en banc).
The fact that Michigan law does not allow for the death penalty is not an aspect of Gabrion’s character or personal record, nor is it a circumstance of the offense (i.e., the planning and murdering of Rachel Timmerman and her daughter). Gabrion argues that he has a constitutional right to present mitigating evidence and argument to the sentencing jury on theories of residual doubt about federal jurisdiction, arbitrariness due to the location of the body, and disproportionality to other equally culpable defendants. But these arguments lack constitutional bases.
In Franklin v. Lynaugh, 487 U.S. 164, 174, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), a plurality of the Court said: "Our edict [in Lockett and Eddings ] in no way mandates reconsideration by capital juries, in the sentencing phase, of their 'residual doubts' over a defendant's guilt. Such lingering doubts are not over any aspect of petitioner’s 'character,' 'record,' or a 'circumstance of the offense.’ " This reasoning is even more compelling when applied to residual doubt about jurisdiction.
In Oregon v. Guzek, 546 U.S. 517, 526, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006), the Court considered (and rejected) the "residual doubt” theoiy in a different way and its reasoning can be applied to the arbitrariness argument that Gabrion proposes here. To analogize Guzek: Sentencing traditionally concerns how, not where, the defendant committed the crime, but the evidence and argument at issue here — the location of the body— concern only where, not how, he did so. The jury decided this issue — where Gabrion committed the crime — during the guilt phase. This evidence and argument would thereby attack a previously determined matter and the law typically discourages collateral attacks of this kind. See id.
In Pulley v. Harris, 465 U.S. 37, 50, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Court held that comparative proportionality review is not constitutionally required. "Any capital sentencing scheme may occasionally produce aberrational outcomes.” Id. at 54, 104 S.Ct. 871.

. Owens sought to admit evidence in mitigation that the prosecutor had offered her a conditional plea agreement for a life sentence (later withdrawn), and that she had offered to plead guilty. Owens, 549 F.3d at 403.

. Accord Schmitt v. Kelly, 189 Fed.Appx. 257, 264 n. 5 (4th Cir.2006) (quoting Johnson ); United States v. Caro, 483 F.Supp.2d 513, 520 (W.D.Va.2007); United States v. Edelin, 180 F.Supp.2d 73, 76 (D.D.C.2001).

. See, e.g., United States v. Moonda, No. 1:06-cr-00395, 2007 WL 2071924 at *1 (N.D.Ohio July 13, 2007); United States v. Bodkins, No. 4:04-cr-70083, 2005 WL 1118158 at *8-9 (W.D.Va. May 11, 2005); United States v. Honken, 378 F.Supp.2d 1040, 1041 (N.D.Iowa 2004); United States v. Sampson, 335 F.Supp.2d 166, 193-98 (D.Mass. 2004) (adopting the broad view of admissibility, but nonetheless excluding the proffered evidence because it would mislead jury and confuse the issues); United States v. Bin Laden, 156 F.Supp.2d 359, 370 (S.D.N.Y.2001).

.The specific evidence that the defendant sought to admit was "the testimony of Kevin McNally regarding the dispositions of other potential capital cases and how they compare to the instant case.” Taylor, 583 F.Supp.2d at 927. McNally is an attorney with the Federal Death Penalty Resource Counsel Project. Id. at 927 n. 2. McNally is also appellant Gabrion’s present counsel of record in this case and the signatory on the briefs submitted in this appeal.

. This case is presently pending on appeal in the Sixth Circuit as United States v. Taylor, No. 09-5517.

. This is the same evidence — i.e., testimony by Kevin McNally — that the defendant sought to introduce in Taylor, 583 F.Supp.2d at 933, discussed supra note 12.

. This was, in fact, his specific argument to the Fourth Circuit. See Brief of Appellant, United States v. Higgs, No. 01-3, 2002 WL 33958104 at 143 (4th Cir. Aug. 21, 2002) ("The fact that these murders occurred on a state easement over federal property as opposed to property owned by the state of Maryland and under Maryland’s jurisdiction is a circumstance of the offense and a totally arbitrary factor that exposed Higgs to the death penalty.”).

. In fact, § 3593(c) contains a stated limitation: "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.” But this limitation does not fit — nor is it anywhere to be found in — the Davis view or the majority’s rendition of it.

. There are those who hold a different view of the argument that deference must be given to local policy preferences and "contempo *363 rary community values." See, e.g., John Brigham, Unusual Punishment: The Federal Death Penalty in the United States, 16 Wash. U.J.L. & Poly 195, 214 (2004) (praising "the authority of the United States to apply its criminal law in the face of local opposition as a matter of principle, else we would have no federal civil rights law” (quotation marks omitted)); Roiy K. Little, The Federal Death Penalty: History and Some Thoughts About the Department of Justice’s Role, 26 Fordham Urb. L.J. 347, 475 (1999) (recognizing "the past courageous role of some U.S. Attorneys in enforcing federal civil rights laws in the face of local antipathy”); United States v. Fell, 571 F.3d 264, 270 (2d Cir.2009) (Raggi, J„ concurring in the denial of en banc rehearing) (arguing that this proposition would "be rejected out of hand if the [issue] were opposition to the sorts of civil rights, environmental, or gun trafficking requirements that are enforced through federal criminal law in ways not always mirrored in state legislation”).

. There are currently 18 jurisdictions without the death penalty: Alaska, Hawaii, Illinois, Iowa, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, North Dakota, Rhode Island, Vermont, West Virginia, Wisconsin, Puerto Rico, and the District of Columbia. At last count, there were eight federal death-row inmates from these non-death-penalty jurisdictions: Carlos Caro (West Virginia), Donald Fell (Vermont), Marvin Gabrion (Michigan), Dustin Honken (Iowa), Angela Johnson (Iowa), Ronald Mikos (Illinois), Alfonso Rodriguez (North Dakota), and Gary Sampson (Massachusetts). See *364 http://www.deathpenaltymfo.org/federaldeath-row-prisoners.

. Five Circuits have rejected this view. United States v. Fields, 516 F.3d 923, 950 (10th Cir.2008); United States v. Mitchell, 502 F.3d 931, 993 (9th Cir.2007); United States v. Sampson, 486 F.3d 13, 31 (1st Cir.2007); United States v. Fields, 483 F.3d 313, 345-46 (5th Cir.2007); United States v. Purkey, 428 F.3d 738, 748 (8th Cir.2005).

. Indeed, the Constitution would allow “a scheme requiring the State to prove by a mere preponderance of the evidence that the aggravators outweigh the mitigators.” Marsh, 548 U.S. at 187 n. 2, 126 S.Ct. 2516 (Scalia, J., concurring).